McKAY CORPORATION

v.

The HOME INSURANCE COMPANY.

No. 731.

United States District Court
N. D. Indiana, Fort Wayne Division.
Nov. 16, 1956.

Gilmore Haynie and Jerome B. Van Orman, Haynie, Logan & Van Orman, Fort Wayne, Ind., for plaintiff.

Hugh E. Reynolds, Slaymaker, Locke & Reynolds, Indianapolis, Ind., J. A. Bruggeman, Fort Wayne, Ind., for defendant.

PARKINSON, Judge.

This is an action seeking recovery on an oral contract of insurance in which the court directed a verdict for the defendant at the conclusion of the plaintiff's case.

The plaintiff has filed a motion for new trial and it is the question raised thereby which now solicits the decision of this court.

■ Many years ago the Supreme Court of the United States rejected the scintilla of evidence rule in the federal courts, and held that before the evidence is left to the jury there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed. Improvement Company v. Munson, 1871, 14 Wall. 442, 448, 20 L.Ed. 867. Although our Seventh Circuit Court of Appeals, on October 15, 1956, in Taran Distributing, Inc., v. Ami, Inc., 7 Cir., 237 F.2d 488, holds that some general framework to guide trial judges in ruling on motions for directed verdicts was provided by the Supreme Court in Pennsylvania R. Co. v. Chamberlain, 288 U.S. 333, 343, 53 S.Ct. 391, 77 L.Ed. 819, which quotes from and follows the rule in Improvement Company v. Munson, supra, we followed the more narrow rule prescribed in MacKay v. Costigan, 7 Cir., 179 F.2d 125, 127, in passing upon the motion for directed verdict in the case at bar, to the effect that it presented a question of law as to whether or not, when all of the evidence with reasonable inferences therefrom was considered in its aspect most favorable to the plaintiff, there was a total failure or lack of evidence to prove any necessary element of the plaintiff's case, and our answer was that there was a total failure and lack of such evidence and we, therefore, directed the jury to return a verdict for the defendant.

It must be continually realized that this is not a case of negotiations between the plaintiff and a general agent of the defendant where no written insurance contract resulted. In this case the evidence on behalf of the plaintiff is that a written insurance policy was issued and delivered to the plaintiff, and was introduced in evidence by the plaintiff, but the plaintiff contends that it did not cover all of the property it was agreed that it would and, therefore, there was an oral contract of insurance other than the written policy issued which covered the other property.

■ There is no rule of contract law more logical nor more concretely established than once a contract has been reduced to writing and executed, all prior negotiations are merged therein, and the rights of the parties must be determined by its terms. It can not be contradicted, qualified or destroyed by evidence of oral negotiations which induced its execution. However, if it fails to conform to the actual agreement between the parties by reason of fraud, mutual mistake or the mistake of the one and the fraud of the other it may be reformed so as to make it conform to the actual agreement.

■ Under the law of Indiana, which here applies, the burden is upon the person seeking to enforce a parol contract of insurance to establish, not only the making of the contract, but also the authori-

ty of the agent to make it. State Life Ins. Co., v. Thiel, 1939, 107 Ind.App. 75, 20 N.E.2d 693.

There is a great body of law on the subject of what constitutes a general agent for an insurance company and the authority of a general agent to bind his company but it has no application here because the only evidence as to the authority of the agent McFadden was his testimony as a witness for the plaintiff and he testified that he was not a general agent. He was asked the following question by the plaintiff and gave the following answer,

"Q. And is it not a fact that you were a general agent for the Home Insurance Company?

"A. I was regarded as a general agent from the commission angle only, in that there are various percentages of commission and I received the highest rate, because of ability, length of service and so forth, in the issuance of the policy."

The plaintiff offered no evidence of the authority of the agent McFadden except McFadden himself and there is no evidence in this record that McFadden had the authority to make an oral contract of insurance and bind the defendant nor is there any evidence in this record from which a reasonable inference could be drawn that McFadden had such authority.

Counsel for the plaintiff has stated in open court that there are inconsistencies in the testimony of Richard McKay, upon which the plaintiff's case as to a parol contract completely rests, and indeed there are, but his testimony as to his conversation with McFadden in the latter part of March, 1952, as to the agreement prior to the issuance and delivery to him of the policy introduced in evidence as Plaintiff's Exhibit No. 15, must be summed up as follows:

"Q. Now, in your conversation with Mr. McFadden, I will ask you what type of a policy you and he discussed, in other words, what coverage were you to have under the policy, if you know? A. He told me I would have thirty-five thousand dollars coverage on the policy with the Home, that it—the coverage would be of an inland marine type which he explained to be a floater type policy that would cover my material or the United States Rubber Company's material any place it went.

"Q. Now I will ask you against what, did you discuss what it would insure you against? A. Yes.

"Q. What did he say, or what did you say? A. I discussed with Mr. McFadden, it would insure against fires and punctures and other risks that were mentioned.

"Q. You mean punctures to the crates, stoving-in on the side of the crates? A. To the crates or the fuel cells.

"Q. Now, what did he say when you discussed this question about fire and extended coverage? A. He assured me that this policy would cover it.

"Q. Did he say when he would place this policy in effect? A. Yes, he told me he would take care of that right away."

As to the premium Mr. McKay testified as follows:

"Mr. McFadden told me there would be a $150.00 deposit for the premium on this policy, and that I would be billed at the end of the year for any differences above or short of the $150.00. In other words, they would refund me any money that would be in a lesser amount, or I would pay a greater amount than the $150. based on thirteen cents per hundred on crates to the United States Rubber Company."

Mr. McKay testified that in April, 1952, Mr. McFadden delivered the policy, identified and in evidence as Plaintiff's Exhibit No. 15, to him together with invoice and testified as follows:

"Q. Did you pay Mr. McFadden the $150.00 that you and he had discussed in the month of March?

"A. Yes, I sat down and wrote Mr. McFadden a check for $150.00 for the invoice."

Plaintiff's Exhibit No. 15 shows upon its face that the premium therefor was $150 and that it is a special policy known as transportation or inland marine insurance policy and insured the plaintiff's liability, assumed or otherwise, for property of the U. S. Rubber Co. in the plaintiff's care, custody and control for processing consisting of crating.

Under the evidence there is a total failure of proof that any parol contract of insurance was made between the parties, even if the agent McFadden had the authority to make such a contract and bind the defendant. Plaintiff's Exhibit No. 15 constituted the contract between the parties and all prior negotiations of the parties were merged therein and this record is completely devoid of any evidence of any oral contract of insurance in addition to Plaintiff's Exhibit No. 15 or from which a reasonable inference could be so drawn.

The plaintiff complains of the ruling of the Court in sustaining objections to questions propounded by the plaintiff to witnesses calling for statements made by McFadden long after the negotiations between McKay and McFadden in March, 1952, and long after the issuance of Plaintiff's Exhibit No. 15 and the delivery thereof to the plaintiff. It has always been the law in Indiana that declarations of an authorized agent made at the time and as a part of the transaction are admissible in evidence and will bind his principal, but declarations or statements of the agent made thereafter concerning the closed transaction are never admissible in evidence against his principal. Union Central Life Insurance Company v. Thomas, 1874, 46 Ind. 44.

The plaintiff had the burden of proving that McFadden had the authority to make an oral contract of insurance which would bind the defendant and that there was a meeting of the minds and such an oral contract of insurance was made. These were necessary elements and, in fact, the very foundation of plaintiff's case, and there was a total failure or lack of evidence to prove them. A view of the evidence most favorable to the plaintiff and facts which such evidence reasonably tended to prove left the plaintiff's case vulnerable to the motion of the defendant for a directed verdict and the motion of the plaintiff for a new trial must be denied.

The clerk will enter order accordingly.