[Civil No. 4275. Filed October 14, 1940.]

[106 Pac. (2d) 332.]

LEE MOOR CONTRACTING COMPANY, a Corporation, Appellant, v. J. S. HARDWICKE and H. C. SPARKS, Registrar of Contractors of the State of Arizona, Appellees.

Messrs. Baker & Whitney and Mr. Lawrence L. Howe, for Appellant.

Mr. Joe Conway, Attorney General, and Mr. W. E. Polley, Assistant Attorney General, for Appellees.

LOCKWOOD, J.—This is an appal by Lee Moor Contracting Company, a corporation, hereinafter called defendant, from a judgment of the superior court of Maricopa county affirming a decision of H. C. Sparks, as registrar of contractors of the state of Arizona, hereinafter called the registrar, revoking a license heretofore issued to defendant under the provisions of chapter 104 of the Session Laws of 1933.

There is no serious dispute as to the facts, the question being solely one of interpretation of certain statutes of the state and of the United States, and rules and regulations promulgated by the federal authorities in pursuance of the latter. A brief statement of the various statutes and regulations involved is necessary.

Article I of chapter 24, Revised Code of 1928, as amended by chapter 31, Session Laws of 1931, and chapter 12, regular Session Laws of 1933, read, respectively, in part as follows:

"Sec. 1352a. *Citizenship in state required for public employment as mechanics or laborers.* No mechanic or laborer not a *bona fide* resident citizen of the state for one year shall be employed upon or in connection with any state, county or municipal works or employment; provided, that in the event mechanics or laborers qualified as herein provided are not available at the location of any such works or employment, the contractor, superintendent, or other person in charge thereof, shall in writing notify the governor, board of supervisors, mayor, or executive head or heads of the political subdivision for which such work is being done, of such fact, and if a sufficient number of mechanics and laborers qualified as in this act provided, do not appear at the scene of such works and apply for employment within seventy-two hours of the time of the receipt of such notice, it shall be lawful to employ mechanics or laborers who are not qualified to supply the deficiency."

"Sec. 1352–A. *Bona Fide Residents To Be Employed.* That in all contracts for public work here-

after let by the state of Arizona, or any of its political subdivisions, and in all performance of any such work by the state or any political subdivision thereof, there shall be employed in the performance of such work only persons who are and have been for not less than one year *bona fide* residents of the state of Arizona, except that contractors or subcontractors may place on such work not to exceed three of their regularly employed non-resident executives and technical experts, and except that when such *bona fide* residents of the state shall not be available for such employment and the proper representative of the Arizona Industrial Commission shall so certify, persons who are not qualified under this section may be employed until such time as there shall be available a sufficient number of employees who qualify under this provision.''

''Sec. 1352–E. *Exception Of Federal Aid Contracts In Certain Instances.* If any provision or condition contained in any of the seven preceding sections of this article shall conflict with any provision of the federal law, or any rule or regulation made under the federal law pertaining to federal aid contracts, then such provision of said sections as is in conflict with such federal law, rule or regulation shall not apply on such federal aid contracts, to the extent that such conflict exists, but all provisions of said sections with which there is no such conflict, shall apply to said federal aid contracts, and the state of Arizona and its political subdivisions are hereby required, whenever said federal law, rules or regulations permit to enter into and perform any such contract subject to the provisions of said sections and make good out of such funds the amount that the representatives of the federal government require to be deducted from the federal aid funds allotted to said contract by reason of the application of the provisions of said sections.''

It is also provided that any violation of the article is punishable as a misdemeanor.

Chapter 104, Regular Session Laws of 1933, regulates the business of contracting in the state of Arizona. It provides, in part, as follows:

"Sec. 1. *Necessity For Securing License.* It shall be unlawful for any . . . corporation . . . to engage in the business . . . of contractor within this state without having a license therefor. . . .

"Sec. 4. *Appointment Of Registrar—Term of Office.* The Governor is hereby empowered to appoint a contractor as registrar of contractors for the purpose of this act, hereinafter referred to as the registrar.

. . .

"Sec. 9. *Grounds For Revocation Of License.* The registrar of contractors may upon his own motion, and shall upon the verified complaint in writing of any person investigate the actions of any contractor . . . and shall have power to . . . revoke a license issued under the provisions of this act if the holder . . . commits any one or more of the following acts or omissions; . . . (d) Wilful and deliberate disregard and violation of the . . . safety laws or labor laws . . . of the state."

The chapter also provides the machinery for a hearing and appeal in the nature of *certiorari* to the superior court.

Defendant applied for and was issued a license under the provisions of chapter 104, *supra.* Thereafter it received a contract from the state highway department for the construction of certain roads within the state of Arizona, called projects FA 99–A, B, D, E and F, being what are usually called federal aid projects. These federal aid projects are handled in substantially the following manner. The state highway department decides to build a certain road and desires federal aid thereon. It prepares plans and specifications in detail and they are submitted to the federal bureau of public roads. If, as, and when the location of the road and these plans and specifications are approved by the bureau, the plan is considered to be a federal aid project, and the state enters into a contract with some contractor for the building of the road, and the federal government contributes a certain percentage of the

cost of the project. However, unless the plans, specifications and execution of the work are in strict conformity with the rules and regulations of, and to the satisfaction of, the bureau, the federal aid will be withheld, and all expenses must be borne by the state of Arizona.

It was obviously because of this rule of the federal government, and because of the desire of the state legislature to secure such federal aid, that section 1352–E, *supra,* was enacted. The effect of the section last referred to is that whenever there is any conflict between the requirements of article I, *supra,* and any laws, or rules, or regulations of the federal government, affecting federal aid projects, the state law must step aside and the federal rule will be followed.

Complaint was filed before the registrar that defendant had violated the law of the state of Arizona, in that it had employed on one of the federal aid projects above described persons who had not for a year previously been *bona fide* residents of Arizona, and who were not executives nor technical experts, at a time when *bona fide* residents of the state were available for such employment, and that it had also employed a workman who was not a citizen of the United States, although he had declared his intention to become such. No criminal complaint had been filed against defendant, charging that it had been guilty of a misdemeanor in committing the acts above specified, as provided by article I, *supra,* nor had it ever been convicted in any court of such a misdemeanor.

The registrar proceeded to a hearing, in accordance with the provisions of chapter 104, *supra,* and it appeared at such hearing that defendant had employed three men as semi-skilled workmen of the intermediate grade, who had not been *bona fide* residents of Arizona for one year, and one skilled workman who was not a citizen of the United States, although he had declared his intention of becoming a citizen in the proper man-

ner. Upon this evidence the registrar found defendant had violated the labor laws of the state, and revoked its license. The superior court sustained the registrar, and the matter is before us for determination.

The first question which arises is procedural, and is whether the registrar had jurisdiction to consider the revocation of defendant's license before the latter was convicted of a misdemeanor for violation of article I, *supra,* in a proper court. In this behalf, it is urged that we have held in the case of *State ex rel. Wilson* v. *Baird,* 36 Ariz. 531, 288 Pac. 1, that such a conviction is a prerequisite to any further proceedings for violation of the statute.

██ In the case cited the question was whether the councilmen of a certain town should be removed from office. The statute involved in that case provided that if any councilman did a certain thing he "shall be deemed guilty of a misdemeanor and upon conviction thereof . . . shall be fined . . . and he shall also cease to be . . . a councilman . . . of such town." Paragraph 1889, Civil Code 1913. In that case we held that the conviction was a condition precedent to the removal of the councilman, but the statute in the present case is very different in its language. While it is true that a violation of article I, *supra,* is punishable as a misdemeanor, chapter 104, *supra,* which provides for the licensing of contractors, and the revocation of such license, nowhere makes conviction of the violation of such article a condition precedent to the suspension of a license. It expressly states that upon the filing with the registrar of a complaint charging any act which is cause for the revocation of a license, the registrar shall proceed to hear the matter in a certain manner, without any reference whatever to a conviction under the article. We think the fact that no criminal conviction of defendant had been had for a violation of the law in question did not bar the regis-

trar from determining in an independent proceeding whether its license should be revoked for that reason.

It is the generally recognized rule of law that any valid statute automatically is a part of any contract affected thereby, regardless of whether it be included specifically in the contract. Sections 1352 and 1352–A, therefore, were automatically a part of the contract between the state highway department and defendant, unless by the provisions of section 1352–E, *supra,* they were not applicable to such contracts. The question of applicability depends, by the terms of section 1352–E, upon whether it was in conflict with any federal statute, or rules, or regulations in pursuance thereof, affecting federal aid projects in Arizona. Section 12 of the federal act of 1921, 23 U. S. C. A., section 13, referring to state projects, reads as follows:

"Construction and reconstruction work and labor in each State shall be done in accordance with its laws and under the direct supervision of the State highway department, subject to the inspection and approval of the Secretary of Agriculture and in accordance with the rules and regulations pursuant to this chapter."

This is an express admission by the federal government that labor done on federal aid projects must be in compliance with the state statute, unless the federal law or regulations provide otherwise.

After the passage of chapter 104, *supra,* the state highway department provided, in its standard specifications, that all bidders on federal aid projects must be licensed contractors under that chapter, but later the following regulation was made by the federal authorities, approved as of February 27, 1935, being Regulation 8, Contracts:

"Section 3. No procedure or requirements shall be approved which, in the judgment of the Secretary, is designed or may operate to prevent the submission of a bid by, or the award of a contract to, any responsible

contractor, whether resident or non-resident of the State wherein the work is to be performed, such as laws and regulations which require the licensing of a contractor before he may submit a bid or prohibit the consideration of a bid submitted by a contractor not so licensed, or rules which govern the prequalification of contractors by which the amount of work that may be awarded to a contractor is limited otherwise than by a full and appropriate evaluation of his experience, equipment, financial resources and performance record."

Under such regulation no project for road work would be approved as a federal aid project if the state required any particular prequalifications, such as licensing, of contractors for bidding on a job. It appears upon consideration of this regulation, in connection with section 1352–E, *supra,* and the obvious policy of the legislature thereunder, that notwithstanding the provisions of chapter 104, *supra,* a license thereunder is not a prerequisite for bidding upon, nor contracting to perform, a federal aid project. Later, however, some difficulty arose in regard to the interpretation of the respective policies of the federal government and different state governments on federal aid projects, and the federal law was amended by the act of June 8, 1938, entitled "Federal Aid Highway Act of 1938", which reads, in part, as follows:

"Hereafter the Secretary of Agriculture shall approve only such methods of bidding and such plans and specifications of highway construction for the type or types proposed as will be effective in securing competition and conducive to safety, durability, and economy of maintenance." Section 12, 23 U. S. C. A., sec. 8a.

This is an explicit declaration by Congress that the only limitations permissible on federal aid contracts were to be such as would "be effective in securing competition and conducive to safety, durability, and

economy of maintenance," and that special local laws attempting to place other limitations upon these projects would not be permitted. It is true that apparently the Secretary of Agriculture issued no explicit regulation annulling any attempt of the state to limit the labor employed to its own citizens and citizens of the United States, as he did in regard to the prerequisites of a contractor's license. But we think this is due to the fact that the standard specifications used by the state highway department contained the following provisions:

"Sec. 8, sub. 1-8-4. *Character of Workmen and Equipment.* ·The contractor shall not employ upon or in connection with the work herein provided for, any person or persons not citizens or wards of the United States of America, or who has not declared his intention to become a citizen.

"Upon request of the State Engineer, Contractor shall furnish evidence of the citizenship of any or all persons employed by him upon or in connection with said work, and must maintain at all times his records of employment open to the inspection of State Engineer, or his designated agent.

"No claim for payment hereunder shall be approved by the State Engineer unless such claim be accompanied with the sworn statement of the Contractor, or his designated agent, that all persons employed by the Contractor upon or in connection with said work, in respect to which said claim is made, were, when so employed, citizens or wards of the United States of America, or had declared their intentions to become citizens.
" . . .

"In the employment of labor, in the performance of a contract in which Federal funds are involved, preference shall be given, other conditions being equal, to honorably discharged soldiers, sailors, and marines, *but no other discrimination among citizens or wards of the United States shall be made.*" (Italics ours.)

Under these standard specifications not only was the only limitation in regard to citizenship that the work-

men should be "citizens or wards of the United States" or one who had "declared his intention to become a citizen," but the specifications expressly provided that "no other discrimination among citizens or wards of the United States shall be made," and it is but reasonable to presume that the federal authorities assumed the state by adopting these specifications had accepted the provisions of section 1352–E as being applicable to the situation.

We are of the opinion, taking all of the various statutes and regulations, federal and state, together, that if the contract in question be construed to be subject to the limitations of sections 1352 and 1352–A, *supra,* it is in conflict with the federal statutes and the regulations of the bureau of public roads. It appears from the evidence in the case that three of the workmen involved were citizens of the United States, and the fourth had declared his intention of becoming a citizen. This being the case, their employment on a federal aid project was not in contravention of sections 1352 and 1352–A, *supra,* because of the exceptions set forth in section 1352–E, *supra.* If the act for which the license of defendant was revoked was not one prohibited by law, the decision of the registrar revoking it was without jurisdiction.

The judgment of the superior court of Maricopa county is reversed, and the case remanded with instructions to render judgment in accordance with the opinion expressed herein.

ROSS, C. J., and McALISTER, J., concur.