TARAN DISTRIBUTING, Inc., et al., Plaintiffs-Appellants,

v.

AMI, Incorporated, Defendant-Appellee.

No. 11635.

United States Court of Appeals Seventh Circuit.

Oct. 15, 1956.

Rehearing Denied Nov. 7, 1956.

David M. Sloan, Benjamin M. Becker, Bernard Savin, Becker & Savin, Chicago, Ill., for plaintiffs-appellants.

Thomas L. Marshall, Charles T. Martin, Bell, Boyd, Marshall & Lloyd, Chicago, Ill., for Ami, Inc., defendant-appellee.

Before FINNEGAN and SCHNACKENBERG, Circuit Judges, and WHAM, District Judge.

FINNEGAN, Circuit Judge.

A peremptory instruction to the jury directing its verdict for defendant underlies the judgment brought here for review. Plaintiffs [1] had been defendant's distributor in various sales areas [2] under five separate written contracts, each of which contained an unequivocal cancellation clause.[3] Defendant admittedly served, and plaintiffs received written notices of the several terminations during September and October, 1953. But for their theory of recovery, on multiple count complaints, plaintiffs contend that defendant, through oral commitment or commitments, relinquished its power, reserved in the written contracts, to terminate them. When the plaintiffs rested their case the trial judge, for reasons he stated in the record took the issues away from the jury. Plaintiffs now insist that the district judge "misconstrued the uncontroverted evidence" adduced by them and further erred by allowing defendant to plead the statute of frauds (as to the fifth count of each complaint) at the close of plaintiffs' case.

Under the complaints filed by plaintiffs, which were substantially identical in form and alleged the execution of the several written distributorship contracts, they had the burden of proving a binding oral agreement (or agreements) overriding the written cancellation clauses. Or, more bluntly speaking, it appears that plaintiffs think various conversations between representatives of the corporate parties deleted the contract cancellation clauses and supply the requisite evidence to go to the jury.

In its last analysis the directed verdict below was based upon an insufficiency of evidence to support the plaintiffs' case under the various counts of their complaints. While reviewing courts can only provide trial judges with guides for rul-

1. There were two separate cases filed below: Taran Distributing, Inc., a Florida corporation v. Ami, Incorporated, a Michigan corporation, Case No. 54C318; North American Music Co., S. A., a Cuba corporation v. Ami, Incorporated, a Delaware corporation, Case No. 54C1467.

These actions were consolidated by order of the District Court. Judgments, in each cause, were entered in the Consolidated cause, No. 54C318. A notice of appeal was filed in that cause.

2. These distributorship agreements were dated and covered the following geographical sales territories: July 1, 1948—Cuba; September 7, 1948—Florida; November 3, 1948—certain Georgia Counties added to Florida territory; March 1, 1950—modification of Cuba contract; May 10, 1950—Puerto Rico.

The contracts, in the form of a standard agreement prepared and printed by defendant, are substantially identical in material respects. Under each, defendant granted plaintiffs an "exclusive franchise, right and privilege" to act as distributor in the designated territory of defendant's coin-operated music machine, apparatus and equipment, parts and accessories. Defendant agreed to sell plaintiffs their "entire requirements" of such machines and allied products.

Defendant is a manufacturer of phonographs. Plaintiffs are in the business of distributing coin-operated phonographs, vending machines and amusement devices.

3. The language is identical, in each contract with the following: " * * * This agreement may be terminated by either party hereto upon not less than (30) days' written notice to the other."

ing on motions for directed verdicts, some general framework was long ago described by the Supreme Court in Pennsylvania R. Co. v. Chamberlain, 1933, 288 U.S. 333, 343, 53 S.Ct. 391, 395, 77 L.Ed. 819:

"* * * It repeatedly has been held by this court that before evidence may be left to the jury, 'there is a preliminary question for the judge, *not whether there is literally no evidence*, but whether there is any upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.' [Citing.] And *where the evidence is 'so overwhelmingly on one side as to leave no room to doubt what the fact is, the court should give a peremptory instruction to the jury.'* [Citing.] The rule is settled for the federal courts, and for many of the state courts, that whenever in the trial of a civil case the evidence is clearly such that if a verdict were rendered for one of the parties the other would be entitled to a new trial, it is the duty of the judge to direct the jury to find according to the views of the court. * * * [Citing.] The scintilla rule has been definitely and repeatedly rejected so far as the federal courts are concerned. * * *" (Italics ours, except for the word "*onus*".)

Though plaintiffs insist the trial judge "misconstrued" the issues framed by the various counts in their complaint, we think the record demonstrates the contrary. Defendant's motion for a directed verdict clearly focused on each count in that pleading presented for disposition under the consolidating order. Arguments of counsel, for both sides, were addressed to all phases of the allegations before the court below. Of course it was unnecessary for the trial judge to particularize and itemize his grounds for allowing defendant's motion.

Stripped of verbiage, and closely following plaintiffs' own analysis, the five counts amount to the following. Count I alleges the existence of an oral agreement "that plaintiffs would have the right to act as defendant's distributor so long as the Model E phonograph was in production." Relying on that alleged oral agreement, plaintiffs were induced to refrain from exercising their own right to terminate the written contracts and expended large sums of money. Subsequently defendant cancelled the written distributorship agreement. The evidence produced in support of this count consisted of a conversation in Grand Rapids, Michigan, introduced for the purpose of showing a separate oral undertaking by defendant not to exercise its contract right of termination. Of this flimsy showing, plaintiffs say that "the jury could have found that the evidence introduced in support of Count I showed that the original written agreement had been amended by the oral agreement, or that there had been a waiver by one or both parties of their right to terminate that agreement."

Since this parol evidence, labeled "the Grand Rapids conversation" spills over into Counts II and III (though as plaintiffs contend, for other purposes) we reproduce the relevant portions most favorable to plaintiffs and taken from their brief at pages 5–6.

"According to plaintiffs' witnesses, that conversation was arranged because of Maynard Ross's impending marriage and his desire to discuss with Haddock his 'position' with defendant (R. 122–23). Plaintiffs' witness stated, in substance, that Maynard Ross opened the conversation by asking whether he should plan on taking his future wife to Cuba (R. 123, 265–66). Maynard Ross testified that Haddock responded by stating that: '* * * I could be fully assured we would be his distributors for as long as the Model E was in production' (R. 322). Sam Taran testified that Haddock's response was as follows: '* * * you know that you are set. You know that you are going to be with us practically as long as you want to

be. However, let me say this much to you—you are set with the Model E phonograph * * *' (R. 124). Taran then asked Haddock as to his own position at Miami (R. 124, 266, 322). Haddock responded, according to Taran's testimony by saying, 'Let me say that this goes for you, too, as well as it goes for Maynard. You go along with the Model (E) and as long as Model (E) is in production you can certainly rely on this distributorship and just go out and do the best you can' (R. 124). Maynard Ross testified that Haddock had responded by saying, 'Sam, you don't have to worry. You have always been one of our best, if not the second best distributor in the entire organization, and you are set as long as the Model E is run' (R. 323). During this conversation Haddock also stated, according to plaintiffs' witnesses, that defendant intended to produce the Model E phonograph for a period of 18 to 20 months, that the new model was a 'great' phonograph, that the additions then being made to defendant's plant would enable it to produce 40.9 to 50% more phonographs, and that defendant would now be able to deliver 'plenty of phonographs' to plaintiffs and thus enable plaintiffs to make up any 'deficit' which they had suffered on prior models (R. 124, 266, 323)."

By their Count II plaintiffs allege that over a period of years defendants had orally represented to them that the distributorship contracts would not be cancelled. The Grand Rapids conversation, according to plaintiffs, showed a "continuing course of action and dealing between the parties which were alleged to have resulted in a mutual understanding or agreement that the distributorships would not be cancelled arbitrarily, and that the relationship would continue for a reasonable period of time." (Appellant's brief, p. 30).

That same conversation is mentioned in, and offered as supporting Count III. Here plaintiffs press for recovery on a theory of fraud allegedly flowing from defendant's alleged failure and refusal to supply plaintiffs as part of a continuing conspiracy to injure plaintiffs. Thus, plaintiffs contend that they launched an expensive promotion relying on defendant's oral statements and thereafter defendant conspired with new distributors to enjoy the fruits of plaintiffs' promotional activities.

Plaintiffs, in Count IV, sought damages because of defendant's alleged failure and refusal to supply plaintiffs with their requirements of phonographs, parts and equipment according to the written contract provisions.

Damages are claimed under Count V for breach "of an oral agreement or agreements made by defendant in September 1953, to sell the phonographs required by plaintiffs to fill the orders which they then had on hand without regard to any prior oral agreements or conversations."

Plaintiffs also claim existence of another reversible error because defendant was allowed to amend its answer, after plaintiffs closed their evidence, by pleading the statute of frauds as to that fifth count. Their counsel plainly stated to the trial court that the "last count"— Count V was "the oral contract." (T.R. 188). At that stage under plaintiffs' shifting approach up and until then, the amendment was seasonable and not earlier waived.

A view of the evidence most favorable to these plaintiffs and facts which such evidence reasonably tended to prove left their case vulnerable to the motion for directed verdict. Gunning v. Cooley, 1930, 281 U.S. 90, 50 S.Ct. 231, 74 L.Ed. 720; People's Savings Bank v. Bates, 1887, 120 U.S. 556, 562, 7 S.Ct. 679, 30 L.Ed. 754. That there were conversations at Grand Rapids and in Chicago [4]

---

4. Walters, a Miami attorney, testified below. He explained that his presence at the conference was for the sole purpose of describing Mr. S. Taran's personal

during 1953, among the parties, is undisputed. But those conferences are utterly devoid of references to oral agreements or substantial manifestations of firm oral undertakings between intelligent business men. We think the utterance of defendant's president Haddock a pretty slender reed with which to impliedly beat down the written contracts and written cancellations. From our study of this impoverished record we are fully satisfied that all the arguments and points urged by plaintiffs lack persuasive force or warrant extended treatment here. It is our considered judgment that the district judge not only understood all of the issues tendered by both sides, but readily penetrating the morass of evidence, correctly withdrew the case from the jury.

The judgment appealed is affirmed.

Affirmed.

---

problem with the Immigration authorities. Walters was not otherwise representing Taran during this conference—

indeed the evidence shows Walters spoke only on the topic of immigration.