402 P.2d 541

Kenneth C. YEAZELL, Appellant,

v.

Hyman COPINS, Bernard L. Garmire, Lloyd Vath, Lloyd Wixon, Kenneth Ice and Joseph Hartnett, as members of the Police Pension Board for the City of Tucson, Appellees.

No. 7888.

Supreme Court of Arizona.

En Banc.

June 3, 1965.

Johnson, Darrow, D'Antonio, Hayes & Morales, Tucson, for appellant.

Healy, Laubscher & Dickerson, Tucson, for appellees.

STRUCKMEYER, Vice Chief Justice.

Appellant Kenneth G. Yeazell, having completed in excess of twenty years of service with the Police Department of the City of Tucson, requested retirement effective May 3, 1962. The Police Pension Board of Tucson retired appellant, fixing the amount as directed by the 1952 amendment to the Police Pension Act of 1937, A.R.S. § 9–923. Appellant brought an original action for declaratory judgment in the superior court asserting that his retirement should be computed in accordance with the 1937 act as it existed at the time he entered the service of the Police Department of the City of Tucson in 1942. From an adverse judgment, he appeals.

By the act of 1937, § 16–1808, A.C.A. 1939, appellant was entitled to be retired with a monthly pension equal to one-half of his average monthly compensation for *one year* immediately prior to the date of retirement. The 1952 amendment, Ch. 93, § 3, Laws of 1952, provides for retirement at the rate of one-half of the average monthly earnings for *five years* immediately prior to the date of retirement. The computation of appellant's pension under the 1952 amendment gives him $7.21 a month less retirement pay than if computed under the 1937 act. There is no claim made nor is there any suggestion from the facts presented that appellant may have waived or is estopped to claim the benefits given to him by the 1937 act.

The question of the extent of the vesting of pension rights of a public employee is not without some difficulty. The appellate courts of thirty-five states have had presented either the identical problem we have here or related problems. See annotation 52 A.L.R.2d and the four prior annotations, 137 A.L.R. 249, 112 A.L.R. 1009, 98 A.L.R. 505 and 54 A.L.R. 943. As stated by the annotator in 52 A.L.R.2d at 441:

> "Development of the law on the question under annotation has been long and tortuous, reflecting the increasing pressure placed upon the judiciary by the evolution of the now generally accepted theory that pensions are a part of the compensation of an employee to which, under ordinary circumstances, he is as much entitled as he is to the wages paid him for the work he has actually performed."

Twice before we have interpreted the provisions of the 1952 amendment. Rob-

inson v. Police Pension Board, City of Tucson, 85 Ariz. 384, 339 P.2d 739; Police Pension Board for City of Tucson v. Denney, 84 Ariz. 394, 330 P.2d 1. In the former, the decision was by a majority, two judges dissenting; in the latter, four judges heard the case with one of the four concurring in the result only. We are now of the view that it is appropriate and desirable to re-examine those decisions in order to fairly settle the law in this jurisdiction.

A great majority of the states have followed the common law in holding that a pension is a gratuity to which no rights vest in the pensioner; e. g., McCarthy v. State Board of Retirement, 331 Mass. 46, 116 N.E.2d 852. But in Arizona the common law is binding only insofar as it is found applicable, A.R.S. § 1–201. By the Constitution of Arizona, Art. 9, § 7, A.R.S., the granting of a gratuity by the legislature is forbidden:

> "Neither the State, nor any county, city, town, municipality, or other subdivision of the State shall ever * * make any donation * * * to any individual, association, or corporation * * *."

It is plain that in this state pensions cannot be sustained as constitutional unless anchored to a firmer basis than that of a gift.

While a moral obligation is sufficient to support a claim which *may* constitutionally be recognized, Fairfield v. Huntington, 23 Ariz. 528, 205 P. 814, 22 A.L.R. 1438, the various retirement acts for public employees in Arizona cannot be upheld unless the state or political subdivision enters into a legal obligation founded upon a valuable consideration. The state may not give away public property or funds; it must receive a *quid pro quo* which, simply stated, means that it can enter into contracts for goods, materials, property and services.

In 1954, the Supreme Court of Pennsylvania, in recognizing the shift from the concept of a gratuity to that of deferred compensation for services rendered, said:

> "Much of the misapprehension which apparently still exists in the minds of conscientious administrators of pension funds is possibly due to the fact that there still lingers a remnant of the ancient idea that a pension is a manifestation of sovereign generosity. The concept of pensions has come down through the centuries wearing a cloak of monarchical dispensation. Kings conferred pensions on court favorites, artists and military heroes with a flourish which proclaimed that the royal treasury was as inexhaustible as the crown's power was unlimited. However, despite ceremony and pronunciamento, the pensioner obtained no vested right to the proclaimed pension. In fact, he could not be any more assured of a continuation of the pension

than he could be assured that his head would remain on his shoulders if he should displease his absolutist benefactor. But the pension of today is not a grant of the Republic nor in this case is it a gift of the City Fathers. It is the product of mutual promises between the pensioning authority and the pensioner; it is the result of contributions into a fund which exists for the single purpose of pensions." Hickey v. Pittsburgh Pension Board, 378 Pa. 300, 304-305, 106 A.2d 233, 52 A.L.R.2d 430.

The California Supreme Court forty-seven years ago in O'Dea v. Cook, 176 Cal. 659, 169 P. 366, in construing a constitutional provision of similar meaning to Arizona's, rested the decision on the basis we find controlling here:

"A pension such as this law contemplates is not a gratuity or a gift. *If it were, all of the provisions pertaining to it would be void, under the constitution of the state.* Art. 4, § 31; Taylor v. Mott, 123 Cal. 497, 56 Pac. 256. A pension is a gratuity only where it is granted for services previously rendered, which at the time they were rendered gave rise to no legal obligation. United States ex rel. Burnett v. Teller, 107 U.S. 64, 2 Sup.Ct.R. 39, 27 L.Ed. 352; Mahon v. Board of Education, 171 N.Y. 263, 63 N.E. 1107, 89 Am.St. Rep. 810; State [ex rel. Haberlan] v. Love, 89 Neb. 149, 131 N.W. 196, 34

L.R.A.(N.S.) 607, Ann.Cas.1912C, 542. But where, as here, services are rendered under such a pension statute, the pension provisions become a part of the contemplated compensation for those services, and so in a sense a part of the contract of employment itself. Hammitt v. Gaynor (Sup.) 144 N.Y.Supp. 123; State [ex rel. Haberlan] v. Love, supra; People [ex rel.] v. Abbott, 274 Ill. 380, 113 N.E. 696." 176 Cal. 659, 661-662, 169 P. 366, 367. (Emphasis supplied.)

■ Notwithstanding that the state can only part with its money or property by agreement and for a valuable consideration, this Court in Denney, supra, referred to the right of retirement as "in the realm of quasi-contracts" and in Robinson, supra, as a "contingent interest" and an "expectancy", all ambivalent terms having no fixed significance. Thereby, appellant was relegated to a second-class status as if the government had a special standing to renege on the terms of employment after the contract has been entered into and part performance has taken place—a status which recognized neither moral responsibility nor legal obligation.

■ As a contract, certain principles of law are apparent. That the laws of the state are a part of every contract has been repeatedly decided under a variety of circumstances, American Federation of Labor

v. American Sash & Door Co., 67 Ariz. 20, 189 P.2d 912, aff. 335 U.S. 538, 69 S.Ct. 258, 260, 93 L.Ed. 222, 6 A.L.R.2d 481; Lee Moor Contracting Co. v. Hardwicke, 56 Ariz. 149, 106 P.2d 332; Wise v. First Nat. Bank of Nogales, 49 Ariz. 146, 65 P.2d 1154; Commercial Credit Co. v. Phoenix Hudson-Essex, Inc., 33 Ariz. 56, 262 P. 1; Pinal County v. Hammons, 30 Ariz. 36, 243 P. 919. We unqualifiedly reject any premise for this decision which does not forthrightly accept as its controlling principle that the rights and responsibilities arising out of the contract of employment are not firm and binding. Controversies as to those rights should be settled consistent with the law applicable to contracts.

■ A.R.S. § 9–925 provides a member of the police department whose membership began prior to July 1, 1952, and who serves the department twenty years in the aggregate may, upon application, be retired. It is, therefore, one of the conditions of appellant's contract of employment that if he completes twenty years of service Tucson promises certain deferred payments as retirement. This is a condition precedent to liability by the municipality for retirement benefits. A condition is a fact which "must exist or occur before a duty of immediate performance of a promise arises, in which case the condition is a 'condition precedent.'" Restatement of the Law of Contracts, § 250(a). Under paragraph d. of § 250 may be found this comment:

"The 'fact' which according to the definition constitutes a condition most commonly is the occurrence of an event after the formation of a contract, as where an insurance policy is conditional on a specified kind of future loss * * *."

That an applicant for retirement may not earn the right to benefits because he does not perform the condition does not mean that from the moment of entrance into the service of Tucson as a police officer there is not a firm, binding contract.

■ It should, at this point, be recognized that public employment seldom pays on the same scale as private enterprise for the same services. The consideration of promised retirement is in private industry a major inducement both for the entrance into by superior personnel and their continuation in employment and avoidance of the expense of labor turnover. See Psutka v. Michigan Alkali Co., 274 Mich. 318, 264 N.W. 385. Government, with its various public agencies, enters into areas on a scale so vast and to such an extent as to have scarcely been conceived fifty years ago. To the end that the public service may be improved, the legislature has authorized the state and its various subdivisions to establish retirement and pension plans. These plans are not dependent upon the benevolence of the employing agency but are prescribed by the legislature and the conditions of the

employment, as related to retirement from public service, are provided by general law. Retirement is, as in private industry, a valuable part of the consideration for the entrance into and continuation in public employment.

■ Other states, and we believe those having the better rationale, have reached the same conclusion that the right to a pension becomes vested upon acceptance of employment.

"The deceased was a member of the police department for approximately fourteen years before his death, during the entire period of which he paid his required 4 per cent. of each salary check received. A pension based upon such facts is not a gratuity. It is a periodical allowance of money granted by the city in consideration of services rendered or of loss or injury sustained, *and* payments actually made for that purpose.

"It has been clearly held that the pension provisions of the city charter are an integral portion of the contemplated compensation set forth in the contract of employment between the city and a member of the police department, and are an indispensable part of that contract, and that the right to a pension becomes a vested one upon acceptance of employment by an applicant. O'Dea v. Cook, 176 Cal. 659,

169 P. 366; Aitken v. Roche, 48 Cal. App. 753, 192 P. 464; French v. Cook, 173 Cal. 126, 160 P. 411; article 17, § 183, Charter of the City of Los Angeles." Dryden v. Board of Pension Com'rs. of City of Los Angeles, 6 Cal. 2d 575, 578–579, 59 P.2d 104, 106. (Emphasis in original.)

And see the cases and authorities cited in both the majority and dissenting opinions in Robinson v. Police Pension Board, supra.

■ The holdings of Robinson and Denney that an employee does not have the right to any fixed or definite retirement benefits but only to a substantial or reasonable pension is incompatible with the concepts we have expressed. A contract cannot be unilaterally modified nor can one party to a contract alter its terms without the assent of the other party, see e. g. Newhall Land and Farming Co. v. Hogue-Kellogg Co., 56 Cal.App. 90, 204 P. 562; Trowbridge v. Jefferson Auto. Co., 92 Conn. 569, 103 A. 843; York v. Central Illinois Mutual Relief Association, 340 Ill. 595, 173 N.E. 80; Becker v. Faber, 280 N.Y. 146, 19 N.E.2d 997, 121 A.L.R. 1010; Friday v. Regent Improvement Co., 330 Pa. 481, 199 A. 914; Nelsen v. Farmers Mutual Auto Ins. Co., 4 Wis.2d 36, 90 N.W.2d 123. As the Illinois Supreme Court stated in York v. Central Illinois Mutual Relief Association, supra:

"There is no doubt that the parties to a contract may by their mutual agreement accept the substitution of a new contract for the old one with the intent to extinguish the obligation of the old contract, but one party to a contract cannot by his own acts release or alter its obligations. The intention must be mutual." 340 Ill. 595, 602, 173 N.E. 80, 83.

In passing upon the precise point here made, the Supreme Court of Washington in Bakenhus v. City of Seattle, 48 Wash.2d 695, 296 P.2d 536, approved this language from Baker v. Retirement Board of Allegheny County, 374 Pa. 165, 97 A.2d 231, 233:

" 'As of the time he joined the fund, his right to continued membership therein, under the same rules and regulations existing at the time of his employment, was complete and vested. The legislature could not thereafter constitutionally alter the provisions of his already existing contract of membership. His rights in the fund could only be changed by mutual consent. * * * ' " 48 Wash.2d 695, 699–700, 296 P.2d 536, 539.

Nor may the legislature reduce the amount of the contributions to the fund if thereby the soundness of the fund is jeopardized.

The legislature amended the 1937 statute which was a part of appellant's contract of employment with the City of Tucson. Tucson now attempts to apply the changes retroactively to vary the terms of its contract with appellant. We hold the changes, if applied to appellant without his assent, would constitute an alteration, a modification of his contract. This Tucson may not do.

In the instant case, appellant attempted to establish in the trial court that the Pension Plan of 1937 as it was placed in operation by Tucson was actuarially sound. This is not appellant's burden. If the pension plan was actuarially unsound when it was amended in 1952, the law governing mutual mistakes of fact is applicable in that both Tucson and appellant labored under the mistaken assumption that there was a fund sufficient to afford appellant and the other beneficiaries of the fund the amount provided by the act. A mutual mistake of fact may apply to the existence of the subject matter of the contract, see Corbin on Contracts, § 600, "Mistake as to Existence of Subject Matter Necessary to Performance."

It is not appellant's burden to show the lack of grounds for a recission or a modification of the contract. The party who asserts a fact has the burden to establish the fact. Durazo v. Ayers, 21 Ariz. 373, 188 P. 868. He who asserts the modification of a contract has the burden of proof. Taran Distributing, Inc. v. Ami,

Inc., 7 Cir., 237 F.2d 488. If Tucson were to assert a modification of the contract, then it is its burden to establish appropriate grounds therefor. We do not, however, mean to imply what rights or remedies might be available to either party in a situation where it is established that a retirement plan is actuarially unsound. This is a matter beyond the issues of the present litigation.

 It is evidence from what we have said that appellant had the right to rely on the terms of the legislative enactment of the Police Pension Act of 1937 as it existed at the time he entered the service of the City of Tucson and that the subsequent legislation may not be arbitrarily applied retroactively to impair the contract. Appellant's right to be retired under the Police Pension Act of 1937 existed until he evidenced an intention to be bound by or assented to the modifications provided in the amendment of 1952. The presumption would, of course, be that until appellant exercised his right of election the 1952 amendment was acceptable to him, but once having made an election both he and his widow are forever bound thereby.

 We do not consider that appellant can be compelled to a choice between the 1937 act or the 1952 amendment by legislative coercion. His acquiescence in the application of the 1952 amendment during his employment is not alone sufficient to establish a waiver or an estoppel of rights under the 1937 act although he is obviously estopped from being reimbursed or from withdrawing any additional contributions above the two per cent required of the 1937 act.

 Tucson has not contended in this Court that appellant consented to the modification embodied within the 1952 amendment nor has it claimed that there are facts from which a waiver or estoppel may be derived. We cannot, however, in the light of our former decisions, assume that such facts do not exist. Any statement in both Robinson and Denney, contrary to what has been here said, can no longer be regarded as law. The judgment of the court below is reversed with directions to permit appellees to amend their pleadings to set up facts to establish either a specific intention to accept the 1952 modifications on the part of appellant or waiver or estoppel from which assent can be implied. In the light of this decision, appellant may now file with the Police Pension Board and the court below his written election as to whether he will take under the benefits of the 1952 act. Otherwise judgment shall be entered in favor of appellant.

Reversed with directions.

LOCKWOOD, C. J., and BERNSTEIN and McFARLAND, JJ., concur.

UDALL, Justice (dissenting):

I dissent from the majority opinion in this case. If I understand the argument of the majority correctly, it is that the legislature, by subsequent enactment, can modify the original pension terms only if the employee consents thereto. And if a change is favorable to him, by his silence and continuing employment he assents to the modification; if a change is unfavorable to him or subsequent events make is so, his silence and continuing employment have no effect whatsoever and he can at any time, however remote, assert that he never consented to the change and that it impairs the obligation of his "contract".

The majority opinion is based upon the erroneous premise that there was created upon employment an absolute binding "contract" to a specific pension. Notwithstanding the incorrect impression created by the language of the majority opinion, not a single jurisdiction in the thirty-five that have considered this problem support the "theory" advanced by the majority opinion save the possible exception of Georgia which is not even cited.

The basic question in this case is whether the legislature, having created a public pension system may revise the system, which revision may alter the contributions by or the ultimate benefits to public employees who have not yet retired. A careful examination of the case law reveals the following:

Many of the states follow an old common law concept that a pension is a "gratuity" which can be changed or terminated at will. See Annot., 52 A.L.R.2d 437 (1957) and A.L.R.2d Supp. Service.

Other states have adopted a "contractual" concept but have expressly held that the legislature may change the terms or modify the pension system to improve it or to keep it on a sound basis—i.e., the contractual right is not one going to the specific terms of the system as the majority opinion suggests, but rather a contractual right against unreasonable modification of the pension system. See, *e.g.*, Allen v. City of Long Beach, 45 Cal.2d 128, 287 P.2d 765 (1955), wherein it was said:

*"An employee's vested contractual pension rights may be modified prior to retirement* for the purpose of keeping a pension system flexible to permit adjustments in accord with changing conditions and at the same time maintain the integrity of the system." (Emphasis added)

In Kern v. City of Long Beach, 29 Cal.2d. 848, 179 P.2d 799 (1947) the court said:

*" * * * an employee may acquire a vested contractual right to a pension but that this right is not rigidly fixed by the specific terms of the legislation in effect during any particular period in which he serves.* The statutory language is subject to the implied qualifi-

cation that the governing body may make modifications and changes in the system. The employee does not have a right to any fixed or definite benefits, but only to a substantial or reasonable pension." (Emphasis added)

See also Bekenhus v. City of Seattle, 48 Wash.2d 695, 296 P.2d 536 (1956); Harvey v. Allegheny County Retirement Board, 392 Pa. 421, 141 A.2d 197 (1958); Police Pension and Relief Board of City and County of Denver v. Bills, 148 Colo. 383, 366 P.2d 581 (1961).

If the majority had actually applied the law of the "contractual" states (upon which they allegedly relied) they probably would have been compelled to find that the 1952 amendment was valid. An examination of the 1952 amendment reveals the following: The employee's contribution from his salary was increased from two to five per cent and the pension is now calculated on the basis of the average monthly salary of the last five years' earnings rather than the last year's earnings. These two changes standing alone would be a detriment to the employee. However, the 1952 amendment allows an employee to ultimately receive a pension equal to sixty per cent of his last five years' earnings by working an additional five years beyond the twenty year period. An examination of the problem will reveal that a typical employee who began work before the 1952 change and retires after twenty-five years' service rather than twenty years' service will receive, over the remainder of his life span, a pension equal to considerably more than what he would have received under the 1937 Act.

Another change in the law enacted by the 1952 amendment was the provision that gave the widow of the retired member an allowance equal to two-thirds of the monthly pension being paid to the retired member at the time of his death, whereas the Act of 1937 gave the surviving widow an allowance equal to one-third of the monthly pension being paid at the time of the member's death—or just half as much under the old law. These latter two changes more than offset the two detriments mentioned above. In addition a further provision of the 1952 amendment requires an annual audit and an actuarial study at least every three years in order to maintain the pension system on a sound basis, whereas the Act of 1937 provides neither for an annual audit not for an actuarial study. Although it is difficult to evaluate this requirement in terms of dollars and cents, it certainly cannot be said that such a requirement to insure the soundness of the pension system is not a decided benefit. I therefore feel that the disadvantages incurred by the 1952 amendment were more than offset by other provisions in the same Act representing decided advantages. *The majority opinion, although allegedly relying on the "contractual" theory as expressed by California and several other states, completely*

*fails to apply such theory to the case at bar.* See exhaustive list of cases in McQuillin, Municipal Corporations, § 12.144 (1963) and Annot., 52 A.L.R.2d 437 (1957) and A.L.R.2d Supp. Service.

Another view taken is that the terms and conditions of public service in office or employment rest in legislative policy rather than contractual obligation, and hence may be changed except insofar as the state constitution specifically provides otherwise. Spina v. Consolidated Police, etc., Pension Fund Comm., 41 N.J. 391, 197 A.2d 169 (1964). This case also said that pension benefits are not a "gratuity" within constitutional ban against donation of public moneys and that an employee has a property interest in an existing pension fund which the state cannot simply confiscate.

The majority opinion criticizes the terms, "contingent interest" and "expectancy" in Robinson[1] and the terms "in the realm of quasi-contracts" in Denney,[2] yet it solves the whole problem by merely labeling the matter "contract." As was stated by the New Jersey court in Spina, supra, "* * * there is no profit in dealing in labels such as 'gratuity,' 'compensation,' 'contract,' and 'vested rights.' None fits precisely, and it would be a mistake to choose one and be driven by that choice to some inevitable consequence." 197 A. 2d at p. 174. An excellent article in the Western Reserve Law Review by Walter Probert entitled, "Law, Logic and Communication", describes the various pitfalls courts fall into in this labeling process. A statement from that article is apropos here. "But how can a word like 'contract' or all of its associated abstractions give the vital information leading to an intelligent decision." 9 W. Reserve Law R. 129 (1958) at p. 145.

Perhaps the most thorough analysis of this problem has been made by the New Jersey court in the Spina case. That case involved a legislative amendment requiring 25 years of service and a minimum age of 51 years, instead of the original 20 years of service and a minimum age of 50 years, for retirement of policemen and firemen on a pension. The employees contended that there was a contractual relationship. The court stated that the legislature may revise pension plans which governmental employees are required to join. The court could find no decision by the legislature in the pension statutes to part with its power of revision by thrusting a "contractual" obligation upon municipalities. The court stated:

"This is in harmony with the general approach in our State that the terms and conditions of public service in office or employment rest in legislative policy rather than contractual obligation, and hence may be changed except

1. 85 Ariz. 384, 339 P.2d 739 (1959).

2. 84 Ariz. 394, 330 P.2d 1 (1958).

of course insofar as the State Constitution specifically provides otherwise."

The employees then argued that the law rejecting their position emerged from the erroneous concept that pension benefits are a "gratuity", whereas today their compensatory quality is more plainly in view. The court after stating that there is no profit in dealing in labels then met the argument that a contractual approach must be used because of a constitutional ban against gifts of public moneys.

"We have no doubt that pension benefits are not a gratuity within the constitutional ban against the donation of public moneys. * * * And we think the employee has a property interest in an existing fund which the State could not simply confiscate. Whether the interest thus secured from arbitrary action is limited to the employee's own contribution or extends to the entire fund and whether it becomes still more secure upon retirement, we need not say. The question is too academic to be pursued, for our Legislature would not think of making off with a fund." (Emphasis added)

\* \* \* \* \* \*

"It appears in some cases, notably in California, Georgia, and Washington, that the contract thesis was thought to be required lest the pension benefits fall within the constitutional ban against gifts of public moneys. (cit-

ing cases.) We think there is no need to choose between such stark alternatives. *A payment is not a gift because it rests only upon legislative policy. It does not offend the Constitution to pay for services merely because the arrangement remains subject to legislative revision or rescission.* Government may satisfy even a moral obligation. Indeed, the parent case for the view that pension benefits rest upon legislative will did not call them a 'gift,' but rather an 'expectancy, created by law, and liable to be revoked or destroyed by the same authority.' Pennie v. Reis, 132 U.S. 464, 10 S.Ct. 149, 151, 33 L.Ed. 426, 429 (1889)." (Emphasis added)

The court then went on to show that the "contract" approach was unsound.

"The difficulty with the contract approach is that it cannot withstand the pressures upon it. · · ·

"If the contractual obligation of the public employer is really to equal the expectations of all the rank-and-file members, it must include a guaranty by the employer of the solvency of the fund. · Yet, except perhaps for the Georgia case cited above, we have found no case that goes that far. California, which is the leading exponent of the contract thesis, *holds the Legislature may revise a plan 'to maintain the integrity of the system,'*

*which, if we correctly read the opinions, means that the public employer does not guarantee the solvency of the plan."*

\* \* \* \* \* \*

"The California cases cited in the paragraph above recognize a legislative power of revision, with *the proviso that a benefit that is taken away is reasonably offset by something added.* True the needed power in the Legislature to revise a plan without the consent of the parties to the 'contract' could be said to be 'implied,' but it seems odd to say the State may unilaterally rewrite its own contract or rewrite contracts between its municipal agents and others. *We think it more accurate to acknowledge the inadequacy of the contractual concept."* (Emphasis added)

The court concluded:

" \* \* \* we are satisfied that we should not surprise the Legislature with a decision that it heretofore imposed immutable obligations upon some 200 municipalities to underwrite the solvency of plans with liabilities running into several hundred millions of dollars notwithstanding a long line of cases which assured it that its enactments would remain within its powers to revise."

Along this same thought it should be observed that the problem presented by this case was the very same issue presented in Robinson. At that time this Court told the legislature it had the power to revise pension systems it created. Now six years later we are telling them that they cannot change or revise the pension system they created but rather that they created absolute binding contracts with the original 1937 Act. The legislature should be able to rely with some degree of certainty upon the decisions of this Court.

In addition to the problems of the contract approach above illustrated by the Spina case, in the case at bar several other problems are raised. If Mr. Yeazell's pension is to be controlled by the strict "contract" terms of the 1937 Act, certainly he is entitled to a refund of that portion of his contribution which exceeded 2% of his salary. He would be entitled to a refund, perhaps with interest, of 3% of his contributions since 1952. If he is not estopped to claim benefits under the 1937 Act in 1962, it should logically follow that he is not estopped from claiming he paid 3% too much for ten years ending in 1962 when he retired. The majority, apparently recognizing this situation, did not want the strict contract thesis approach applied after all. The opinion makes the following unsupported statement:

"His acquiescence in the application of the 1952 amendment during his employment is not alone sufficient to establish a waiver or an estoppel of rights under the 1937 act although he is obviously estopped from being reimbursed or from withdrawing any additional contributions above the two per cent required of the 1937 act."

No support in law or reason is given for the above statement but rather it appears as a mere expression of judicial will. Language in a recent Montana case is particularly applicable at this point. The court in State ex rel. Perry v. District Court of Fourth Judicial Dist., Mont., 400 P.2d 648 (1965) said:

"Judicial power is never exercised for the purpose of giving effect to the will of the judge. It is always exercised for the purpose of giving effect to the will of the people as that will is expressed in the law." 400 P.2d at 653.

Also left in a state of confusion are the rights of the other employees already retired. The action below was brought as a class action by Mr. Yeazell and all others similarly situated. The case was tried and the appeal perfected on that basis. The majority opinion completely ignored this phase of the case. Must all others similarly situated now commence an action to determine their pension status? One might also ask whether Robinson and Denney can now claim under this new decision—or are they precluded by the doctrine of *res judicata*?

Perhaps most serious of the problems raised by the majority opinion are the rights of widows of deceased retired employees who began their service before the 1952 amendment. If the "contract" theory is applied to them their present benefit would be cut in half. Presumably if their right to receive benefits under the terms of the 1952 Act were judicially questioned, the majority would by judicial fiat allow them also to have an "election" to pick that "contract" which is most advantageous to them. Justice Hill's dissenting language is Bekenhus v. City of Seattle, 48 Wash.2d 695, 296 P.2d 536 (1956) is apropos here when he described the absurd result a court can arrive at by this contractual approach when changes in the pension law result in both detriments and benefits (like the 1952 Arizona amendment in this case). He described it as "Heads, I win; tails, the city loses."

However, take the situation where an employee retires and "elects" to take under the 1937 Act and shortly thereafter dies. His widow according to the majority opinion would be "forever bound" by her husband's election and her widow's benefit

would be one half as much as it would be under the 1952 amendment.

It is interesting to note that the appellant never raised nor argued the "strict contract theory" as applied by the majority to the case at bar. It is also interesting to observe that the legislature in their comprehensive legislation on this matter did not in any way provide for an "election" between the 1937 Act and the 1952 amendment. Correspondingly there is no provision made for the additional financial burden that will now be placed upon the fund by others similarly situated to Mr. Yeazell as a result of the majority opinion.

I would hold, as do nearly all jurisdictions having decided this issue, that the legislature can make reasonable changes as may be necessary under changing conditions to maintain the integrity and soundness of the pension system. As long as the changes are not unreasonable and arbitrary on their face, it is not a matter for further judicial inquiry.

It is submitted that the majority opinion in this case has no support in reason or logic nor the case law (not even the cases allegedly relied upon) and will create problems far beyond the immediate controversy.

For these reasons I dissent from the majority opinion and would affirm the judgment of the trial court.