860 P.2d 510

**MERCHANTS BONDING COMPANY (MUTUAL), an Iowa corporation, Plaintiff/Appellee,**

v.

**PIMA COUNTY, ARIZONA, a body politic, Defendant/Appellant.**

**No. 2 CA–CV 93–0057.**

Court of Appeals of Arizona, Division 2, Department B.

Aug. 31, 1993.

Redesignated as Opinion and Publication Ordered Oct. 6, 1993.

244

Mesch, Clark & Rothschild, P.C. by Melvin C. Cohen and Scott H. Gan, Tucson, for plaintiff/appellee.

Stephen D. Neely, Pima County Atty. by Frank Cassidy, Tucson, for defendant/appellant.

## OPINION

DRUKE, Chief Judge.

Appellant Pima County, Arizona, appeals from the entry of summary judgment against it on a breach of contract action brought by appellee Merchants Bonding Company (Merchants). Because the material facts are undisputed, our review is *de novo*. *United Bank of Arizona v. Allyn*, 167 Ariz. 191, 805 P.2d 1012 (App.1990). We affirm.

On June 5, 1990, Pima County and REM Construction, Inc. (REM) entered into a construction contract for a project known as the Craycroft Road Trunk Sewer. Three days later, pursuant to A.R.S. § 34–222(A)(2), REM, as principal, and Merchants, as surety, executed a payment bond in favor of Pima County, as obligee, guaranteeing payment of all labor and materials on the project. On November 5, 1990, REM completed the project. On November 9, 1990, REM filed a petition for Chapter 11 bankruptcy in the United States Bankruptcy Court for the District of Arizona. On that date, REM had not been paid the final progress payment of $43,242.98 or any amounts held in retention.

On November 14, 1990, Merchants telephoned Pima County requesting that no further payments be made because REM owed subcontractors and suppliers approximately $24,000. By letter of the same date, both faxed and mailed to Pima County, Merchants confirmed its request that "no further contract monies be paid on the ... project."

On November 19, 1990, Pima County notified Merchants, both by telephone and a follow-up letter of the same date, that Pima County could

> not delay processing [REM's] current claim for payment based on [Merchants'] November 14, 1990, letter, alone ... because the [subcontractor's and suppliers'] claim(s) ... have not been made directly to [Pima County, and that] paragraph 325.10 ... of the ... construction contract ... may offer [REM] a means to secure final payment in spite of the subcontractor's or supplier's [sic] official notice of non-payment to [Pima County].

The "means" in paragraph 325.10 to which the letter refers states that REM may secure final payment by furnishing, in lieu of lien waivers, "an affidavit of [REM] that the releases and receipts ... have been

paid or otherwise satisfied; and consent of the Surety, if any, to final payment."

Pima County received the referenced affidavit of payment from REM on November 19, 1990. Thereafter, it received claims from unpaid subcontractors and suppliers totaling $23,006.02, but never received Merchants' consent to final payment. Pima County nevertheless paid REM the $43,242.98 final payment on December 6, 1990. At the time, it held in retention $49,034.63.[1]

After Merchants paid $229,853.39 to unpaid subcontractors and suppliers, it brought this breach of contract action against Pima County for the amount of the final payment. Merchants prevailed on cross-motions for summary judgment and was awarded $43,292.86,[2] prejudgment interest from December 6, 1990, attorneys' fees and costs. Pima County raises five issues on appeal, none of which requires reversal.

■ Citing *Universal Bonding Insurance Co. v. Gittens and Sprinkle Enterprises, Inc.*, 960 F.2d 366 (3rd Cir.1992), Pima County first argues that it properly paid the final payment to REM as the debtor in possession and trustee in bankruptcy. In *Universal*, federal agencies owed but had not yet paid funds to a contractor in Chapter 11 bankruptcy. The court first held that the funds "should be paid to [the contractor] as debtor in possession pursuant to the broad language of section 541 of the [Bankruptcy] Code," and second,

> that once the funds are received by [the contractor], they will constitute an equitable trust for the benefit of laborers and materialmen. Universal [the surety] may become a beneficiary of this trust by fulfilling its obligation to compensate the laborers and materialmen.

*Universal*, 960 F.2d at 376. Although ostensibly dispositive, *Universal* is distinguishable in one important respect from the case *sub judice* and is therefore inapposite. In *Universal*, the funds held by the government were plainly due and payable to the contractor; here, they were not. The final payment only became due and payable under paragraph 325.10 of the contract upon REM furnishing, in lieu of lien waivers, an affidavit of payment *and* the surety's consent. Because REM failed to furnish Pima County with Merchants' consent, REM failed to satisfy one of the conditions of payment and, therefore, Pima County's duty to make payment did not arise. *See Yeazell v. Copins*, 98 Ariz. 109, 402 P.2d 541 (1965) (condition must occur before duty of immediate performance arises); Restatement (Second) of Contracts § 225(1) at 165 ("Performance of a duty subject to a condition cannot become due unless the condition occurs...."); 13 Am. Jur.2d *Building and Construction Contracts* § 37 (1964). For the same reason, the case at bar is also distinguishable from the other case Pima County cites, *Butler v. Pacific National Insurance Co.*, 375 F.2d 518 (9th Cir.1967), involving due and payable retention funds.

■ Pima County further argues that its actions were reasonable based on the factors set forth in *Balboa Insurance Co. v. United States*, 775 F.2d 1158 (Fed.Cir. 1985). Those factors are inapplicable here. In *Balboa*, the contractor requested a progress payment when the job was still incomplete.[3] The surety protested, but the government nevertheless paid the contractor. The court reviewed the law and concluded that eight factors were "important in determining whether the Government has exercised reasonable discretion in distributing funds...." *Balboa*, 775 F.2d at 1164. Before reaching this conclusion, however, the court made it clear that such discretion applied only to progress payments made before the job was completed.

> [T]here is a significant difference between the Government's role before and after completion of performance on a contract. As opposed to its interest in disbursing retainage payments after completion, during performance it has a

1. This amount was ultimately reduced to $23,034.63 by a back charge of $26,000.

2. The amount of the judgment is $49.88 more than the amount of the final payment. This discrepancy is unexplained by the record.

3. At the time of the contractor's request, the job was 91 percent complete.

vital interest in the 'timely and efficient' completion of the work. It is to overcome 'various unforeseen circumstances which may hinder performance' that the Government incorporates into the contract broad rights and permits the federal procurement officials broad discretion and flexibility.... With respect to the surety, however, this discretion and flexibility is limited by its 'duty to exercise its discretion responsibly and to consider the surety's interest in conjunction with other problems encountered in the administration of the contract.'

*Id.* (citations omitted). In this case, although a progress payment was in issue, it was not paid until well after the job was completed. Accordingly, Pima County did not have, in the words of the *Balboa* court, "a vital interest in the 'timely and efficient' completion of the work" and, therefore, its actions are not measured by the test of reasonableness.

■ Moreover, even if so measured, Pima County's actions were unreasonable under the circumstances. As noted above, the project was complete and, thus, payment was unnecessary to assure completion. Additionally, at the time payment was made, subcontractors and suppliers had notified Pima County directly, as it had specifically requested in its November 19 letter to Merchants, that they had not been paid over $23,000 and, thus, REM's affidavit of payment was questionable at best. Furthermore, when faced with such conflicting claims, Pima County could have simply interpled the $43,242.98 and, thus, avoid the dilemma.

Surely a stakeholder, caught in the middle between two competing claimants, cannot, in effect, decide the merits of their claims by the mere physical act of delivering the stake to one of them. If his position as stakeholder becomes uncomfortable, and the claimants do not take steps to get a judicial solution of the question, the law has provided him with an interpleader proceeding by which he can deposit the stake in court and walk out free of the annoyance of being in the middle.

*Newark Insurance Co. v. United States,* 169 F.Supp. 955, 957 (Ct.Cl.1959). And,

finally, REM failed to furnish Merchants' consent to payment and, thus, Pima County's payment to REM constituted a clear breach of contract.

■ Pima County also argues that Merchants' stop payment notice was void because it violated the automatic stay in bankruptcy. *See* 11 U.S.C. § 362(a). Pima County asserts that by sending the notice, Merchants "clearly intended 'to exercise control over property of the estate' in violation of the automatic stay." We disagree. The notice merely requests that Pima County make no further payments to REM and is nothing more than Merchants' notification that it did not consent to the final payment. Moreover, as discussed previously, without Merchants' consent, payment was not due and payable and it is therefore arguable whether the payment was part of the bankruptcy estate and subject to the automatic stay. *See Pearlman v. Reliance Insurance Co.,* 371 U.S. 132, 135, 83 S.Ct. 232, 234, 9 L.Ed.2d 190, 193 (1962) ("Property interests in a fund not owned by a bankrupt at the time of adjudication, whether complete or partial, legal or equitable, mortgages, liens, or simple priority of rights, are of course not a part of the bankrupt's property and do not vest in the trustee.").

Pima County's next two arguments, that Merchants had no equitable lien in the final payment and that Pima County is not a guarantor of payment, were not made in the court below and are therefore waived. *Stewart v. Mutual of Omaha Insurance Co.,* 169 Ariz. 99, 817 P.2d 44 (App.1991). In any event, neither would change the fact that Pima County's payment to REM without Merchants' consent constituted a breach of contract, thereby entitling Merchants to summary judgment as a matter of law.

Affirmed.

ESPINOSA, P.J., and HATHAWAY, J., concur.