[Civil No. 2646. Filed December 23, 1927.]

[262 Pac. 1.]

COMMERCIAL CREDIT COMPANY, a Corporation, Appellant, v. PHOENIX HUDSON-ESSEX, INC., a Corporation, Appellee.

Mr. Fred Blair Townsend and Mr. Earl F. Drake, for Appellant.

Messrs. Armstrong, Lewis & Kramer, for Appellee.

LOCKWOOD, J.—Commercial Credit Company, a corporation, hereinafter called plaintiff, brought suit against Phoenix Hudson-Essex, Inc., a corporation, hereinafter called defendant, on two separate causes of action. To each of these defendant filed a general demurrer, and to the first one a special demurrer. The general demurrers were sustained, and, plaintiff electing to stand upon its complaint, judgment was rendered in favor of defendant for its costs, and plaintiff has appealed therefrom.

The complaint is voluminous, and it is not necessary that we quote it in full. In the first cause of action it is alleged substantially that the plaintiff was engaged in the business of purchasing executory contracts of conditional sales of automobiles from retail automobile dealers, and the defendant, being such a retail dealer, had been long accustomed to selling contracts of that nature to plaintiff and guaranteeing performance thereof; that it was the general custom and usage of plaintiff as well as other companies engaged in the same business, whenever it retook possession of an automobile for default under a conditional sales contract and redelivered it to the original seller, to do so with the implied understanding between plaintiff and such seller, who had guaranteed the contract on its assignment, that the seller should have the right to resell the car on his own account, but that he was to remain liable as guarantor of the original contract to its full extent; and that defendant well knew such to be the custom. It was then alleged that defendant sold a certain automobile to one Applegate on a conditional sales contract,

which contract was duly assigned by defendant to plaintiff, together with a written guaranty of the performance of the contract; that some time thereafter Applegate defaulted in his payments and plaintiff repossessed the automobile, storing it in California; and thereupon it was agreed between plaintiff and defendant that plaintiff would return the car to the possession of defendant in Phoenix, Arizona, and the latter would pay plaintiff the necessary expenses incurred in the repossession, storage, and return of the automobile, and as a further consideration for the return there was an implied agreement, in accordance with the general custom of companies of the nature of plaintiff and defendant, that the defendant as guarantor of the contract was to remain liable to plaintiff for the payment of the entire obligation of the contract; that the cost of the repossession and redelivery was $110, and the balance of the purchase price was $320.76. Plaintiff prayed judgment for that amount, together with an attorney's fee. The second cause of action was substantially the same, except for a difference in the parties, and that there was no charge made for the repossession, storage and redelivery of the car in question as in the first cause of action.

It is and was the contention of defendant in support of its general demurrers that it appeared affirmatively from the face of the complaint that by the acts of plaintiff the original debtors on both causes of action had been released from their contract, and that such release of the principal debtor necessarily as a matter of law released the guarantor. It is, of course, a well-recognized principle of law that the release of a principal debtor without the consent of the guarantor releases the latter from his guaranty. 28 C. J. 993. Nor, indeed, is this denied by plaintiff. It does deny most strenuously, however, that any such release appears upon the face of the complaint, and

contends that unless it does so appear defendant was bound to plead the release as an affirmative defense and could not raise the issue by demurrer.

The fourth legislature of the state of Arizona in 1919 adopted chapter 40 of the Session Laws of that year, which regulated conditional sales. In that act there are very definite and specific provisions as to just what the remedies of the seller under conditional sales contracts are when the purchaser is in default, and a further provision that the buyer may not waive such provisions before or at the time of the making of the contract. We have held in the case of *Stapley Co.* v. *Rogers,* 25 Ariz. 308, 216 Pac. 1072, that this provision is a declaration by the legislature of a public policy, and that no contract can be made contrary thereto. Indeed, it is a general rule of law that when the legislature adopts a statute governing contracts of any nature, that statute *ipso facto* becomes a part of the contract, and the latter will be construed as though the statute were written into it. *Morrell* v. *City of Phoenix,* 16 Ariz. 511, 147 Pac. 732. Under the statute the seller, on the default by the buyer, has the right to repossess himself of the property, and either must or may sell the same at public auction, depending upon certain conditions set forth in the statute. If such resale is made and it does not bring sufficient to pay the various expenses incurred and the balance due on the purchase price the seller may recover the deficiency from the buyer. If for *any reason* there is no resale, the matter is governed by section 23 of the act, which reads, in part, as follows:

"Section 23. (*Rights of Parties Where There is No Resale.*) Where there is no resale, the seller may retain the goods as his own property without obligation to account to the buyer except as provided in section 25, and the buyer *shall be discharged of all obligations. . . .* " (Italics ours.)

Plaintiff herein, upon the assignment of the contract of sale, became possessed of all the rights and was also under all the liabilities of the original seller, so far as the contract was concerned. It appears affirmatively from the face of the complaint that plaintiff repossessed the automobile. This, of course, it had the right to do, either with or without notice. At this time defendant had no right whatever to said automobile or under the contract of sale, it having assigned all its rights to plaintiff. It also appears affirmatively from the face of the complaint that plaintiff, after such repossession, voluntarily delivered the car to defendant on such terms as prevented the former from holding a statutory resale. This delivery in no manner complied with the provisions regarding a resale set forth in the statute, whereby the seller or his assignee still held the buyer liable for a deficiency. Plaintiff having pleaded that it had parted with the automobile to another for a valuable consideration, under circumstances inconsistent with a statutory resale, it was in effect an allegation that it had elected to deal with the goods as its own property, and in such case, by the terms of section 23, *supra*, the buyer was discharged of any obligation under the contract. Such being true, the guarantor was discharged from its original obligation to pay the debt of the buyer. The complaint therefore shows affirmatively on its face that defendant was not liable on its original guaranty and plaintiff·did not state a cause of action in its complaint on said guaranty.

It is contended by plaintiff, however, that even admitting such to be the case, it has affirmatively set up a new and subsequent parol agreement whereby defendant agreed to pay to it a certain sum of money in return for delivery of the automobile in question, and to pay the amount remaining unpaid on the original purchase price, and that said oral contract is sufficient to maintain the action, the balance of the

complaint being treated on such theory as an inducement. The allegations which plaintiff contends support this theory are contained in paragraph VI of the complaint, which reads, in part, as follows:

"That after said default by said Applegate plaintiff repossessed said automobile and stored same in Los Angeles, California; that thereupon it was expressly agreed between plaintiff and defendant that plaintiff would return said car to the possession of defendant in Phoenix, Arizona, and that defendant would thereupon pay to plaintiff all expenses reasonably incurred in the repossession, storage, and redelivery of said automobile to defendant; that within a reasonable time after the making of said agreement plaintiff caused said automobile to be delivered from Los Angeles, California, to Phoenix, Arizona, and redelivered possession thereof to defendant pursuant to said agreement; that the reasonable expenses incurred by plaintiff in the retaking of said car and the redelivery of same to defendant in Phoenix, Arizona, amounted to the sum of $110; that plaintiff redelivered the car to defendant on the 2d day of July, 1926; that also as a part of the consideration for the redelivery of said automobile to defendant it was the implied agreement between plaintiff and defendant pursuant to the general custom and usage of automobile finance companies engaged in business in Phoenix, Arizona, and the particular usage of plaintiff, as fully set forth in paragraph II hereof, that defendant as guarantor of said original sales contract was to remain liable to plaintiff for the payment of the entire obligation of said contract, and was to dispose of said car on his own account. . . . "

It will be seen upon examination of the quoted portion of the complaint that plaintiff attempts to set up therein an express agreement to repay it for the costs of repossession and storage, and an implied agreement that "defendant as guarantor of said original sales contract was to remain liable to plaintiff for the payment of the entire obligation of said contract,"

and not that it for a new consideration agreed to assume some kind of obligation as its own. Just what is this implied agreement? It is that defendant ''as guarantor'' should ''remain'' liable for payment of something. And that ''something'' is expressly stated to be the ''entire obligation of said contract.'' Its duty was still confined then to seeing, not as a primary debtor, but as a guarantor, that the obligations of a certain contract were fulfilled. As we have shown previously, the obligations of that contract could be satisfied in several ways. The creditor chose to satisfy it, so far as the complaint shows, under section 23, *supra*. Such being the case, there was no unsatisfied ''obligation,'' and defendant consequently was under no liability. Had plaintiff pleaded a new agreement, with a proper consideration, for defendant to perform some independent act not dependent on the satisfaction of the original contract, the situation might have been different, but we must take the pleadings as we find them. There was no cause of action stated by the implied agreement just discussed.

So far as the language of the complaint in regard to the payment of the expenses of repossession is concerned, we think it did state a cause of action. There was an allegation of an express agreement that, in return for the delivery of the car in question to it, the defendant would pay plaintiff a certain sum of money. Defendant urges that this is subject to a special demurrer on the ground of misjoinder of causes of action. The court, having determined the general demurrers in favor of defendant, did not rule on that point, but we think that the special demurrer is not good. If defendant was entitled to raise the point, it should have been by a motion to strike instead of demurrer. *City Carpet Beating Works* v. *Jones,* 102 Cal. 506, 36 Pac. 841.

The principles we have just laid down are equally applicable to the second cause of action set up in the

complaint. The judgment of the superior court is affirmed as to the second cause of action and reversed as to the first cause of action, and the cause is remanded for further proceedings in accordance with the views expressed herein.

ROSS, C. J., and McALISTER, J., concur.