428 P.2d 998

**Reid SMITH, Appellant,**

v.

**SUPERIOR EQUIPMENT COMPANY, Appellee.**

**No. 8348.**

Supreme Court of Arizona, In Division.

June 14, 1967.

Rehearing Denied July 11, 1967.

Stevenson, Babbitt, Warden & Smith, by William W. Stevenson, Flagstaff, for appellant.

Sullivan & Doyle, by John F. Sullivan and Olgerd W. Kalyna, Phoenix, for appellee.

McFARLAND, Justice:

Reid Smith, herein referred to as Smith, brings this appeal from the judgment of the superior court of Maricopa County, in which judgment was entered in favor of the appellee, Superior Equipment Co., herein referred to as Superior.

Superior, as plaintiff in the lower court, sued Smith for the total amount payable under a lease agreement between the parties. Smith defended on the ground that the lease of personal property, when taken in conjunction with an option to buy, constituted a conditional sale. There is little dispute in the facts, which may be summarized as follows:

On April 17, 1962, Smith agreed to lease from Superior one Pettibone-Michigan Model 12 Speed Skidder, a device used in logging operations. The agreed value of this machine was set at $22,000.00, which amount was to be paid Superior in case of loss or destruction. The lease agreement stated:

"And the Lessee hereby hires and rents from the Lessor the above described equipment for the sum of ONE THOUSAND and no/100 Dollars ($1000.00) per month, commencing on the 18th day of April, 1962, and continuning for a period of 24 guaranteed months inclusive from the above date. Last (3) three months rental payable in advance."

The lease further provided that:

"It is agreed that if the Lessee fails to make the payments * * * the Lessor, without notice or demand, may take pos-

session of any or all of said equipment wherever found, and at its option may terminate this agreement, and thereupon ·the Lessee will pay to the Lessor all rentals and other obligations due, together with all costs and expenses incurred in and about the retaking of said equipment and the return thereof to the Lessor, including attorney's fees. * * *"

Superior then sent a letter to Smith which was dated April 17, 1962, although not signed and delivered until some time subsequent to that date. The material portions of the letter were as follows:

"This letter is to confirm our willingness to offer you the following proposition:

"At any time during this 24-month rental period but only on the basis that all rentals are paid when due, we will execute a Bill of Sale transferring title of this equipment to you allowing 90% of the rents paid to apply against the purchase price of $22,000.00. * * *"

Smith took possession of the "skidder" and paid the three months' advance rental. He paid each installment thereafter for a period of seven months, and in all had paid Superior $10,000 under the contract when he notified Superior that he was dissatisfied and would like to return the machine. Various negotiations were conducted between the parties over a period of about four months, and, being unable to reach an agreement, Superior retook possession of the skidder. Superior then filed suit against Smith in superior court, asking for the entire amount that had not been paid under the lease ($14,000), plus costs of retaking and attorney's fees.

Smith's defense was based on two alternate theories. The first defense was on the ground that this was not just a lease and option, but was in fact a conditional sale. The second was that if it were to be considered a lease, there was no acceleration clause, and the most to which Superior could be entitled was the amount of unpaid rentals which had come due at the time of the retaking, or $4,000, plus costs. The

trial court made no findings of fact or conclusions of law, but evidently agreed with the second theory, as judgment was rendered in favor of plaintiff in that amount.

[1, 2] Superior contends that the lower court should be affirmed for the reason that "appellant may not complain of the judgment which he, himself, has invited the court to enter." We see no merit in this contention. It is settled that a party may rely on as many claims or defenses as are available to him regardless of their conflicting nature. Rule 8(f), Arizona Rules of Civil Procedure, 16 A.R.S.; Julian v. Carpenter, 65 Ariz. 157, 176 P.2d 693; Mutual Benefit Health and Accident Association v. Ferrell, 42 Ariz. 477, 27 P.2d 519. In the instant case, Smith did not waive his insistence that this was a conditional sale, but merely in the event the court did not so find, that Superior could not recover more than rentals due at the time of the retaking, plus cost of retaking and attorney's fees, as provided in the lease agreement.

The next question presented on this appeal is whether this transaction was in fact a conditional sale under the law in effect at that time; i. e., the Uniform Conditional Sales Act, A.R.S. § 44-301 to A.R.S. § 44-330. Smith contends he is entitled to certain statutory remedies under that act.

That portion of the Uniform Conditional Sales Act which defines a "conditional sale" and which is pertinent to the case at bar is as follows:

"In this chapter:

"1. 'Conditional sale' means:

\*  \*  \*  \*  \*  \*

"(b) Any contract for the bailment or leasing of goods by which the bailee or lessee contracts to pay as compensation a sum substantially equivalent to the value of the goods, and by which it is agreed that the bailee or lessee is bound to become, or has the option of becoming the owner of such goods upon full com-

pliance with the terms of the contract." A.R.S. § 44-301, subsection 1(b)

Smith presented uncontradicted evidence to the effect that before signing the lease he had conversations with one of Superior's salesmen, and the entire contract—lease and option—were discussed at that time. The president of Superior Equipment Co., John M. Hazelett, gave the following description of the transaction:

"Q. Was it the understanding of the parties that the option to buy was part of the transaction?

"A. Yes, I believe it would be part of the whole deal, although it is agreed between the two parties that it is two contracts."

■ Superior contends that the option is void in that it was a mere offer, unsupported by consideration, and it was never accepted by Smith. We do not feel that this argument is well taken. Had Smith exercised his right to purchase under the option, it would have been binding upon Superior. It does not matter whether the offer is unilateral; it is the mere existence of this right which causes the transaction to fall within the statutory definition of a conditional sale. A lease and option similar to those in the instant case were considered by the Supreme Court of Wisconsin in James Talcott, Inc. v. P & J Contracting Co., 27 Wis.2d 68, 133 N.W.2d 473, wherein it was said:

"Under the terms of the contract, P & J had the option of becoming the owner upon full compliance with the terms of the contract. The contract did provide, however, that failure to make a rental payment within ten days of the time specified shall cause the option to expire. *The contract nevertheless fulfils the statutory definition because P & J did have the option of becoming the owner upon full compliance with the terms.* It is our opinion that this is controlling, even though the contract purported to provide for forfeiture of

the option upon continued default. The contract was accordingly a conditional sale * * *." [Emphasis added.] 133 N.W.2d at 477

Superior relies on Oberan v. Western Machinery Co., 65 Ariz. 103, 174 P.2d 745, in which this court held that a provision giving a "lessee" the option of buying the property (in which event the lessee was to receive credit for 75 per cent of the rentals paid) was not a conditional sale where there was no obligation on the part of the lessee to pay beyond the rental period for which he might choose to keep the property. See also Automatic Voting Mach. Corp. v. Maricopa County, 50 Ariz. 211, 70 P.2d 447, 116 A.L.R. 320.

The Oberan case is clearly distinguishable from the one at bar. In the instant case Smith has contracted to rent the property for "24 guaranteed months." At the end of this term he would have paid $24,000, or $2,000 more than the agreed value of the property. At this time he would be given title to the property on making a final payment of $400 more.

In Burroughs Adding Machine v. Bogdon, 8 Cir., 9 F.2d 54, the court considered the effect of a transaction in which the "lessee" was to pay approximately ten per cent more in order to acquire title on completion of the rental term. In arriving at the conclusion that the transaction constituted a conditional sale, the court stated:

"* * * The final payment which is nominally the purchase price, is so small in comparison with the entire purchase price as to leave no real choice to the 'lessee.' The obvious purpose was to dispose of the machine under such conditions that when the 'lessee' had paid the 'rental' he could not afford to fail the relatively small final payment to obtain it. This would have been the obvious and natural, if not the inevitable, result. Evidently it was what the parties desired and intended to accomplish.

\* \* \* \* \* \*

"The whole instrument shows a careful, studied attempt to give it the form and appearance of a lease; but the obvious purpose and the natural effect thereof is to consummate a conditional sale. * * *" 9 F.2d at 56, 57

The question of whether a lease and option is to be treated as a conditional sale has, in the absence of statute, been a source of great litigation, and exhaustive annotations on this point are to be found in 175 A.L.R. 1366, 1384; 92 A.L.R. 304, 323; 43 A.L.R. 1257; 17 A.L.R. 1421, 1435. A summation of the law on this point is to be found in 2 Williston on Sales, Revised Edition, § 336, wherein it is stated:

"Sellers desirous of making conditional sales of their goods, but who do not wish openly to make a bargain in that form, for one reason or another, have frequently resorted to the device of making contracts in the form of leases either with options to the buyer to purchase for a small consideration at the end of the term, provided the so-called rent has been duly paid, or with stipulations that if the rent throughout the term is paid, title shall thereupon vest in the lessee. It is obvious that such transactions are leases only in name. The so-called rent must necessarily be regarded as payment of the price in instalments, since the due payment of the agreed amount results, by the terms of the bargain, in the transfer of title to the lessee.

"This has been clearly recognized and many of the statutes relating to conditional sales in express terms include leases within their scope. Apart from statutes courts have disregarded the form of the transaction and have held that where payment of so-called rent nearly or quite pays the price of the goods the bargain is a conditional sale and is subject to the rules governing that kind of transaction. This is so provided in the Uniform Conditional Sales Act."

Superior contends that the transaction in the instant case should not fall within the clear terms of the Uniform Conditional Sales Act for the reason that there

are two instruments, and that they should be considered separately. It is settled, however, that:

"* * * when two instruments are entered into between the same parties concerning the same subject matter, whether made simultaneously or on different days, they may, under some circumstances, be regarded as one contract and construed together." 17 Am.Jur.2d, Contracts, § 264

See also Phoenix Title and Trust Co. v. Stewart, 9 Cir., 337 F.2d 978; Guadalupe-Blanco River Authority v. City of San Antonio, 145 Tex. 611, 200 S.W.2d 989; Freedland v. Greco, 45 Cal.2d 462, 289 P.2d 463.

The device used in the instant case of separating the transaction into two instruments is but a patent attempt to circumvent the requirements imposed upon a conditional seller under the law of this state as expressed in the Uniform Conditional Sales Act. In finding that a conditional sale existed in Beckwith Machinery Co. v. Matthews, 190 Md. 182, 57 A.2d 796, 175 A.L.R. 1360, the court said:

"* * * We cannot give much credit to the testimony that if the full purchase price of this machinery had been paid in monthly installments of $579 by the company to the corporation, the corporation would not have transferred full title to machinery to the company. In transacting business in our modern day, some people desire not to know what the law is, but how to evade the law. However clever the form of such evasion may take, when discovered, it is denounced by the courts. * * *" 57 A.2d at 801

See also James Talcott, Inc. v. P & J Contracting Co., supra.

■ This court is unable to agree with Superior that the transaction in the instant case is other than a conditional sales agreement. The instruments in question were executed as a part of the same transaction and are dependent upon each other for their existence. They bear the same

date and when read together they exemplify a conditional sales agreement complete on its face. The trial court's determination in this respect is not binding on this court, "since an interpretation of instruments is a question of law to be determined by this court independent of the trial court's findings." T. D. Dennis Builder, Inc. v. Goff, 101 Ariz. 211, 418 P.2d 367; LeBaron v. Crismon, 100 Ariz. 206, 412 P.2d 705.

Having determined this contract to be one of conditional sale as defined by A.R.S. § 44–301, supra, we must look to the provisions of the Uniform Conditional Sales Act in determining the rights and liabilities which arose from this transaction. In the instant case less than fifty per cent of the purchase price had been paid at the time of the repossession by Superior, and Superior retained possession of the equipment, there being no demand by Smith that there be a resale in conformity with the statutory provisions of the uniform act. We find this case to be controlled by the decision of this court in Commercial Credit Co. v. Phoenix Hudson-Essex, Inc., 33 Ariz. 56, 262 P. 1, wherein we said:

"The Fourth Legislature of the state of Arizona in 1919 adopted chapter 40 of the Session Laws of that year, which regulated conditional sales. In that act there are very definite and specific provisions as to just what the remedies of the seller under conditional sales contracts are when the purchaser is in default, and a further provision that the buyer may not waive such provisions before or at the time of the making of the contract. We have held in the case of Stapley Co. v. Rogers, 25 Ariz. 308, 216 P. 1072, that this provision is a declaration by the Legislature of a public policy, and that no contract can be made contrary thereto. Indeed, it is a general rule of law that when the Legislature adopts a statute governing contracts of any nature, that statute ipso facto becomes a part of the contract, and the latter will be construed as though the statute were written into it.

Morrell v. City of Phoenix, 16 Ariz. 511, 147 P. 732. Under the statute the seller, on the default by the buyer, has the right to repossess himself of the property, and either must or may sell the same at public auction, depending upon certain conditions set forth in the statute. If such resale is made and it does not bring sufficient to pay the various expenses incurred and the balance due on the purchase price the seller may recover the deficiency from the buyer. If for *any reason* there is no resale, the matter is governed by section 23 of the act, which reads, in part, as follows:

" 'Section 23. *(Rights of Parties Where There is no Resale.)* Where there is no resale, the seller may retain the goods as his own property without obligation to account to the buyer except as provided in section 25, and the buyer *shall be discharged of all obligations.* * * *' (Italics ours.)" 33 Ariz. at 60, 262 P. at 2

■ At the time of this transaction, and until the adoption by this state of the Uniform Commercial Code, section 23 of the Uniform Conditional Sales Act was codified as A.R.S. § 44–323. A.R.S. § 323 refers to A.R.S. § 44–325 in setting forth the rights of the parties where there is no resale. Under the circumstances of the instant case, A.R.S. § 44–325 is not applicable. Therefore, we are brought to the clear mandate of the statute that "the buyer shall be discharged of all obligation."

The commissioner's note to § 23 of the Uniform Conditional Sales Act explains the rationale underlying the manner in which this section was drafted as follows:

"This section frees the seller from all obligations where the law is complied with and there is no resale. In such cases the equity of the buyer is probably worthless and it has seemed best to wipe out the transaction and clear the slate of all obligations on both sides." 2 Uniform Laws Annotated, § 23, Commissioner's Note, p. 36

Having elected to retake possession of the subject of the sale, and treat it as its own, Superior has, by statute, caused the buyer to be discharged of his contractual obligation to pay the amount due at the time of the retaking plus costs. The judgment of the trial court is reversed and the case remanded with directions to enter judgment in favor of defendant, Reid Smith.

STRUCKMEYER and UDALL, JJ., concur.