OPINION
FROEB, Judge.
The primary issues on this appeal are: (1) whether a security interest in consumer goods sold pursuant to a retail installment sales contract terminated when the original contract price was paid in full, despite the seller’s consolidation of that contract with a second contract for the sale of additional goods and (2) whether the second contract was violative of the Truth-in-Lending Act, 15 U.S.C. § 1601 et seq.
This litigation was initiated on February 27, 1978, when Alice Huskie filed a complaint in Navajo County Superior Court against Ames Brothers Motor and Supply Company, Inc. (Ames) alleging conversion of a horse trailer sold to her by Ames. The complaint was subsequently amended to allege violations of the Truth-in-Lending Act (hereinafter referred to as TILA or the *399 Act). Trial was to the court and judgment was entered in favor of defendants on June 10, 1981. Huskie filed a timely appeal.
The pertinent facts giving rise to this lawsuit are as follows. On January 29, 1977, Ames, as seller, and Bob and Alice Huskie, husband and wife, as buyers, entered into a written contract for the sale of a 1976 Champion horse trailer. The contract provided that the cash price of the trailer was $2,195.00 plus tax. The Huskies paid $1,200.00 cash as a down payment and were to finance the balance by making nine monthly payments of $138.49 each, totalling $1,246.41. In connection with the sale, the Huskies obtained a credit life insurance policy to pay the balance of the contract in the event of either of their deaths.
The Huskies made two installment payments. On April 16, 1977, Bob Huskie was killed in an automobile accident and in May of 1977 Ames received proceeds of $890.95 from the credit life insurance policy. The outstanding balance of the contract at that time was either $974.43 or $933.25.[1] Thus, after receipt of the insurance proceeds, less than $100 was owed by Alice Huskie to Ames for the horse trailer.
On June 13,1977, Alice Huskie and Ames entered into a second contract for the sale of a 1975 Ford pickup truck. The contract indicates that Huskie traded in the horse trailer to Ames which was then resold to her along with the pickup truck. The sale was so structured in order to give Ames a security interest in both the trailer and the truck in the second contract. However, there was no transfer of title to the horse trailer in this transaction. Huskie held title to the trailer subject to a lien on behalf of Ames both before and after the second contract was executed.
The June 13, 1977, contract lists a combined cash price for both the trailer and the pickup as $5,995.00 plus tax. It does not identify separate prices for each.[2] It then allows $1,000 for the trade-in of the horse trailer minus $933.45 for the pay-off due to Ames resulting in a credit of $66.55 to Huskie. It then provides for cash down-payment of $1,490.95 (the $890.95 insurance proceeds plus $600.00), a deferred payment of $1,000 and thirty remaining monthly payments of $167.03 each.
Huskie made a payment of $167.03 on July 27, 1977. She made no further payments on the contract. Ames repossessed both the horse trailer and the pickup truck in January 1978.
While not contesting Ames’ right to repossess the truck, Huskie brought this action to seek damages for Ames’ repossession of the horse trailer on grounds that this constituted conversion. She argued that she had paid off the horse trailer and that Ames had not obtained a security interest in the trailer by virtue of the June 13,1977 contract. Huskie also alleged that she was entitled to damages because the written contract was violative of the Truth-in-Lending Act.
ARIZONA RETAIL INSTALLMENT SALES TRANSACTIONS ACT
We first address the issue of Ames’ security interest in the horse trailer. Huskie alleges that no security interest could attach because such a security interest would be violative of A.R.S. §§ 44-6002(D)(6) and 44-5501 and because the contractual provision is unconscionable. Ames contends that: A.R.S. § 44-6002(D)(6) is inapplicable to the transaction; the contract complies with A.R.S. § 44-5501; and the contract was reasonable in allowing the seller additional collateral for a credit purchase of the truck.
In considering the applicability of A.R.S. § 44-6002(D)(6) to this transaction, *400 we first note that this statute is part of Chapter 17, Arizona Revised Statutes, entitled “Retail Installment Sales Transactions.” This chapter was enacted by the Arizona Legislature in 1971 as one of several pieces of consumer legislation designed to remedy the difficulties encountered in applying the Uniform Commercial Code to consumer transactions. See generally, Boyd and Balentine, Arizona’s Consumer Legislation: Winning the Battle But ..., 14 Ariz.L.Rev. 627-658 (1972). A.R.S. § 44-6002 provides in pertinent part:
D. A retail installment contract which otherwise conforms to the requirements of this chapter may contain provisions which relate to additional goods and services authorizing any of the following: ******
5. The contract may provide for consolidation of subsequent purchases with one or more of the previous contracts or may provide for a series of sales transactions made pursuant to an agreement providing for the addition of the principal balance, plus the finance charge for the current sale, to an existing balance.
6. The goods purchased under the previous contract or contracts may be security for the goods purchased under the subsequent contract, but only until such time as the total of payments under the previous contract or contracts is fully paid, (emphasis added)
Thus, A.R.S. § 44-6002(D) does authorize cross-collateral clauses, i.e., clauses making previously purchased goods security for goods subsequently purchased. The intent of this provision seems to require a type of “first-in-first-out” allocation of payments, and release of security interests. See In re Coronado, 7 B.R. 53 (Bkrtcy.D.Ariz.1980). However, the language might also be read literally to allow a percentage of each payment to be applied to each debt with a result that none of the security interests are released until all the debts are paid. See Boyd and Balentine, supra, at 648. Compare A.R.S. § 44-6002(D)(6) with the Uniform Consumer Credit Code, § 3.303 (1974). We do not find it necessary to interpret this language under the circumstances of this case, however, because we find the statute inapplicable to the transaction in question.
Definitions for terms used throughout Chapter 17 are contained in A.R.S. § 44-6001, which provides in part:
3. “Goods” means all tangible chattels, except motor vehicles, money, things in action or intangible personal property other than merchandise certificates or coupons as described in this chapter____
******
5. “Motor Vehicle” means any self-propelled device in, upon or by which any person or property is or may be transported or drawn on a public highway____
(emphasis added)
The horse trailer involved in this transaction would clearly be subject to A.R.S. § 44-6001 et seq., as it is not self-propelled and is therefore not a motor vehicle subject to exclusion from coverage. However, the Ford pickup is a motor vehicle. A.R.S. § 44-6002(D)(6) refers to previous and subsequent contracts involving “goods” as defined by A.R.S. § 44-6001. Therefore, it does not govern contracts which combine both the purchase of motor vehicles and a prior contract for goods covered by the chapter. There are no “goods” as defined in A.R.S. § 44-6001 purchased under the “subsequent contract” to bring it within the parameters of A.R.S. § 44-6002(D)(6).
We next consider the application of A.R.S. § 44-5501 to the transaction in question. A.R.S. § 44-5501 constitutes Chapter 16 of Title 44 of the Arizona Revised Statute and is entitled “Restrictions on Deficiency Judgments in Consumer Credit Sales.” This statute is applicable to all consumer credit sales of goods or services including motor vehicles. Subsection C of the statute provides:
Neither the seller of consumer goods or services nor his assignee may take any other security for a consumer credit sale other than (1) a security interest in goods sold or as to which services have been *401 rendered and (2) in the realty to which such goods may be affixed. If the seller or assignee elects not to retake the goods, but brings an action for the unpaid balance, the goods may not thereafter be retaken and are not subject to judicial process to enforce any judgment obtained therein.
It is Ames’ position that the June 13, 1977, contract provides for a sale of both the horse trailer and the pickup truck and that it properly obtained a security interest in both items as the “goods sold.” Huskie argues that the June 13th contract was only for the sale of the 1975 Ford pickup truck and that it was structured to reflect a sale and resale of the horse trailer simply as a mechanism to allow Ames to obtain additional security for the sale of the pickup truck. She further argues that to allow this “sale and resale” would enable creditors to circumvent A.R.S. § 44-5501 and render its limitations on security interests meaningless. We agree.
This court will not set aside findings of fact by the trial court unless they are clearly erroneous. United Bank v. Mesa N. O. Nelson Co., Inc., 121 Ariz. 438, 590 P.2d 1384 (1979); K & K Manufacturing, Inc. v. Union Bank, 129 Ariz. 7, 628 P.2d 44 (App.1981). However, where facts are not in dispute and where the trial court’s findings of fact are in many respects conclusions of law, this court is not bound by them. Globe American Casualty Co. v. Lyons, 131 Ariz. 337, 641 P.2d 251 (App.1982). An interpretation of an instrument is a question of law to be determined by this court independent of the trial court’s findings. LeBaron v. Crismon, 100 Ariz. 206, 412 P.2d 705 (1966). This court may draw its own legal conclusions from facts found or inferred in the judgment of the trial court and is not bound by findings of the trial court in questions of law or mixed questions of law and fact. Guirey, Srnka & Arnold, Architects v. City of Phoenix, 9 Ariz.App. 70, 449 P.2d 306 (1969).
The trial court adopted the parties’ pretrial statement of facts as the findings of fact in this matter. The parties did not disagree with respect to the circumstances surrounding the execution of the June 13, 1977, contract. In fact, in an answer to interrogatories Ames explained the relationship of the horse trailer to the sale of the pickup by stating that “by putting two together [it] would give additional security to Ames.”
The record reflects that the $890.95 insurance proceeds plus the $600.00 down payment made at the time the second contract was executed[3] exceeded the balance due on the horse trailer. Therefore, Huskie had paid more than a sufficient amount of money to obtain a release of Ames’ lien on the horse trailer.
The court looks to the substance of a document rather than to its form. See Adams v. Dion, 109 Ariz. 308, 509 P.2d 201 (1973); Quintana v. Myers, 108 Ariz. 95, 492 P.2d 1202 (1972). The character of a contract is determined by its provisions and not by its label. See Kintner v. Wolfe, 102 Ariz. 164, 426 P.2d 798 (1967); Chu v. Ronstadt, 17 Ariz.App. 486, 498 P.2d 560 (1972). Looking at the substance rather than the form of the June 13, 1977, contract, we conclude that it was a contract for the sale of a pickup truck enabling Ames to acquire a security interest in both the pickup truck and the horse trailer, previously purchased consumer goods.
Ames argues that such contracts ought to be permissible as a matter of public policy. It indicates that when purchasers come in and wish to obtain a vehicle on credit for which they have no collateral, the seller would be put to considerable risk if he is entitled to retain only security for that sale in the vehicle being sold. Ames argues that if the vehicle is damaged, lost or even repossessed, its value is not likely to cover the balance due on the contract. *402 Therefore, it argues that a seller ought to be permitted to take sufficient collateral to secure the debt in addition to the vehicle being sold. It argues that the public interest is served by enabling sellers to make credit sales of vehicles to consumers who might otherwise be denied such sales. We do not find this argument persuasive.
The legislature has already set forth its policy with respect to consumer credit sales in A.R.S. § 44-5501 by limiting creditors to a security interest in the goods sold and requiring sellers to elect to retake the goods in which a security interest has been obtained or to bring an action for the unpaid balance. A creditor may protect himself by requiring a greater down payment so that a security interest in the goods will be sufficient collateral to insure that the value of the goods sold will cover the balance due on the contract. In any event, the legislature has expressed its policy in this matter through A.R.S. § 44-5501 by limiting the security interest to the goods sold.
We find that the portion of the June 13,1977, contract purporting to create a security interest in the 1976 Champion horse trailer is violative of A.R.S. § 44-5501(C). The laws of the state are a part of every contract and where a contract is incompatible with a statute, the statute governs. School Dish No. 1 of Pima County v. Hastings, 106 Ariz. 175, 472 P.2d 44 (1970); Yeazell v. Copins, 98 Ariz. 109, 402 P.2d 541, (1965); Lee Moor Contracting Co. v. Hardwicke, 56 Ariz. 149, 106 P.2d 332 (1940). Consequently, Ames obtained no security interest in Huskie’s trailer and had no right to its possession in January 1978.
Conversion is an act of wrongful control or dominion over personal property in denial of or inconsistent with the rights of another. Sterling Boat Co. v. Arizona Marine, Inc., 134 Ariz. 55, 653 P.2d 703 (App.1982); Scott v. Allstate Ins. Co., 27 Ariz.App. 236, 553 P.2d 1221 (1976). See also Restatement (Second) of Torts §§ 223(A) and 237 (1965). Ames’ seizure of Huskie’s horse trailer was an act of conversion for which she is entitled to recover damages.
As we find A.R.S. § 44-5501 determinative of whether Ames was entitled to a security interest in the horse trailer, it is not necessary for us to determine whether the second contract was invalid on the basis of unconscionability. However, we note that there has been widespread recognition of the abuse inherent in consumer transactions in which no single item is considered fully paid for until the total for all of the combined purchases is paid. Courts have held security interests created by such contractual provisions unenforceable on grounds of unconscionability. See, e.g., In re Coronado, 7 B.R. 53 (Bkrtcy.D.Ariz.1980); Williams v. Walker-Thomas Furniture Co., 350 F.2d 445 (D.C.Cir.1965).
TRUTH-IN-LENDING ACT
We turn next to the issue of whether the June 13th contract violated TILA and applicable federal regulations. Neither party questions the applicability of the Act as Ames was a creditor regularly arranging for the extension of credit for which a finance charge was required and the sale was a consumer transaction. See 15 U.S.C. §§ 1601, 1602(f), (g) and (h) (1982); Regulation Z, 12 C.F.R. § 226 et seq. Accordingly, Ames was required to make disclosures required by the Act and regulations promulgated by the Federal Reserve Board pursuant to the Act. See Regulation Z, 12 C.F.R. § 226 et seq.
Huskie alleges that the June 13, 1977, contract is violative of the Act and the regulations because: (1) it fails to accurately disclose the ten day limit on security interests in after-acquired property; (2) it fails to fully disclose a security interest on the face of the disclosure statement; and (3) it fails to accurately disclose statutory limitations on security interests in goods sold in consolidated installment contracts.
Before addressing the specific allegations we first consider Ames’ argument that Huskie’s truth-in-lending action was barred by the applicable one year statute *403 of limitations. 15 U.S.C. § 1640(e) (1982). Ames argues that the alleged violation occurred June 13, 1977. Huskie filed her first complaint on February 27, 1978, but did not allege TILA violations until filing her amended complaint on February 28, 1980, over a year after the alleged violation occurred.
We note that the original complaint in this cause of action, while not specifically alleging TILA violations, did allege claims arising from Ames’ “failure to accurately, fairly and honestly represent the status of the purchaser’s obligations to the defendant.” The TILA cause of action in the amended complaint is in effect a different theory of recovery for acts described in the first amended complaint. Rule 15(c), Arizona Rules of Civil Procedure, provides in part:
Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading.
A statutory claim relates back to the original claim and is not barred by the applicable statute of limitations if it arises from the same occurrence or transaction. See, e.g., Marshall v. Superior Court, 131 Ariz. 379, 641 P.2d 867 (1982); Barnes v. Vozack, 113 Ariz. 269, 550 P.2d 1070 (1976). While we find no Arizona cases specifically dealing with the relation back of a TILA cause of action, several federal cases interpreting rule 15(c) of the Federal Rules of Civil Procedure, which is identical to the Arizona rule, apply the “relation back” principle to TILA claims. See Brown v. Providence Gas Co., 445 F.Supp. 459 (D.R.I.1976); Ecenrode v. Household Finance Corp. of South Dover, 422 F.Supp. 1327 (D.Del.1976).
Ames does not address the applicability of rule 15(c) to Huskie’s amended complaint. Rather, it argues that by virtue of a stipulation entered into to permit the first amended complaint, it did not waive any defenses by relying on its original answer.[4] Ames then appears to contend that although a statute of limitations defense was not alleged in its original answer, the stipulation meant that it was unnecessary to file an additional answer to raise such a defense. The stipulation, however, does not give Ames the right to rely upon a defense without raising it at all. Since Ames did not raise the statute of limitations as a defense until this appeal, he has waived such a defense. Baures v. Baures, 13 Ariz.App. 515, 478 P.2d 130 (1970). Further, had that defense been properly raised, it would not bar Huskie’s action because we find that her amended complaint related back to the original complaint and was therefore timely brought. Consequently, we reach the merits of the TILA issues.
As for the alleged violations of TILA, appellant first argues that the contract fails to disclose a provision of Arizona law, derived from the Uniform Commercial Code, relating to after-acquired property. A.R.S. § 44-3117(B) provides in substance that a security interest in “after-acquired” property other than accessions covers only such property which is acquired by the borrower within ten days after the lender “gives value.” Appellant argues that the contract gives Ames a security interest in after-acquired property without disclosing that such security interest is limited by A.R.S. § 44-3117(B) to property (other than accessions) acquired within ten days of the contract date. She argues that this was a violation of 12 C.F.R. § 226.8(b)(5) (known as Regulation Z) which provided:
If after-acquired property will be subject to the security interest, ... this fact shall be clearly set forth in conjunction with the description or identification of *404 the type of security interest held, retained or acquired.[5]
There is substantial authority that failure to inform consumers of a statutory ten-day limitation on after-acquired property violates 12 C.F.R. § 226.8(b)(5). See, e.g., Jacklitch v. Redstone Federal Credit Union, 615 F.2d 679 (5th Cir.1980); Pollock v. General Finance Corp., 535 F.2d 295 (5th Cir.1976), cert. denied, 434 U.S. 891, 98 S.Ct. 265, 54 L.Ed.2d 176 (1977); Brown v. Termplan, Inc., 693 F.2d 1047 (11th Cir.1982); Corbin v. Town Finance, Inc., 417 N.E.2d 1172 (Ind.App.1981); Empire Finance Co. of Louisville, Inc. v. Ewing, 558 S.W.2d 619 (Ky.App.1977); Casillas v. Government Employees Credit Union, 570 S.W.2d 57 (Tex.Civ.App.1978). See generally Annot., 32 A.L.R.Fed. 863, 877, § 5 (1977); But see Montoya v. Postal Credit Union, 630 F.2d 745 (10th Cir. 1980), holding to the contrary.
We need not reach this issue, however, because we find that the contract involved here creates a security interest only in the property sold and accessions (which are excluded from the ten-day rule in A.R.S. § 44-3117(B)).
The initial paragraph on the face of the contract provides in pertinent part:
Undersigned Seller hereby sells, and undersigned Buyer Alice M. Huskie hereby buys, subject to the terms and conditions set forth below and on the reverse side of this Contract the following property with all equipment, parts, accessories, and additions thereto (goods); Buyer acknowledges receipt of goods in satisfactory condition and accepts same.
The contract form then provides for an identification of the “goods” which are described as the 1975 pickup and the 1976 horse trailer. By referring to the “following property” and “all equipment, parts, accessories and additions thereto” as “goods” and requiring the buyer to acknowledge that these “goods” have been received in satisfactory condition, it is clear that this provision relates to the truck and horse trailer as they are equipped at the time of the sale and does not include after-acquired property.
Paragraph 9 on the face of the contract is entitled “Security Interest” and provides in pertinent part:
To secure payment and performance of all obligations of Buyer to Seller, Seller retains (and Buyer hereby grants to Seller) a security interest in the above described goods, spare and repair parts, special tools and replacements for and proceeds of any of the foregoing ____ (emphasis added)
It is Ames’ position that paragraph 9 simply reiterates the first paragraph and takes a security interest only in the truck and trailer and items already part of both as described in the first paragraph. Alternatively, Ames argues that even if some of these items referred to “after-acquired” property, such items would constitute “accessions” and would not be subject to the ten-day limit. A.R.S. § 44-3135.
The term “accession” means “an addition to [an object] by the annexation of some material thereto.” Valley Chevrolet Co. v. O.S. Stapley Co., 50 Ariz. 417, 423, 72 P.2d 945, 948 (1937). The term implies “a permanent addition not in the sense that it is impossible to separate the substance annexed from that to which it has been annexed, but in the sense that it is attached thereto with the intention that it should remain permanently so attached.” Id. With this in mind, we examine the terms of paragraph 9.
As already determined, the “abovedescribed goods” refers to the truck and horse *405 trailer as they were equipped at the time of sale and does not include after-acquired property. “Spare and repair parts” are those which would replace component parts which have become unusable or worn out. These replacement parts would then become additions to the truck or trailer and thus would be accessions.
The term “special tools ... for ... any of the foregoing” gives us some pause. If ordinary tools were involved, this might encompass after-acquired property. By limiting the category to “special” tools, however, the security interest involved »is essentially limited to accessions. This is because a “special” tool is one which is to be used specially for the truck or trailer and their accessory parts and equipment. In this sense, a “special tool” is essentially an accession because it serves and relates to property to which the security interest applies. We therefore reject the argument that the agreement violates TILA because of the “special tools” provision.
With respect to the term “replacements for ... any of the foregoing,” we conclude that any item within this category would merely be a substitute for an item already subject to a security interest and by definition would not constitute after-acquired property. Finally, “proceeds” are not subject to the ten-day rule. See A.R.S. § 44-3127(B).
Paragraph 6 on the reverse side of the contract provides:
Buyer agrees that any equipment, repairs or accessories placed upon the goods shall become a component part thereof and title thereto shall be vested in Seller, and included under the terms of this Contract, and any indebtedness therefore if paid by Seller shall be added to the unpaid balance and become immediately due and payable. The goods shall at all times be at Buyer’s risk. The loss, injury to, or destruction of the goods shall not release Buyer from Buyer’s obligations hereunder.
Although the meaning of this paragraph is somewhat unclear, on its face it does not purport to give Ames a security interest in property acquired by the buyer. Title to paragraph 6 property is never acquired by the buyer, it is acquired by the seller. Paragraph 6 appears to contemplate a situation where the seller, not the buyer, places equipment, repairs or accessories upon the goods sold. Under these circumstances, no security interest in “after-acquired property” belonging to the buyer is contemplated. We are not called upon to enforce the provision, but rather must decide a very narrow issue: Does it purport to create a security interest in the buyer’s property? The answer is, it does not. We hold the only security interest provided for in the contract is that which appears in paragraph 9 on the first page.
In conclusion, since the contract does not purport to create a security interest in after-acquired property other than accessions, the ten-day limitation of A.R.S. § 44-3117(B) is not involved and the contract therefore does not violate Regulation Z.
Huskie next contends that the contract failed to comply with 12 C.F.R. § 226.8(a) requiring mention of security interests to be made together on either:
1) The note or other instrument evidencing the obligation on the same side of the page and above the place for the customer’s signature; or
2) One side of a separate statement which identifies a transaction.[6]
She argues that paragraph 6 and paragraph 10 on the reverse side of the agreement purport to take security interests. She contends that this violates the above-quoted regulation because it is not located on either the face of the contract prior to signature or on one side of a separate statement identifying the transaction.
As. previously discussed, we conclude that paragraph 6 does not give Ames a security interest in property acquired by *406 Huskie. Upon examination of paragraph 10, we find that it likewise does not create a security interest. Paragraph 10 provides:
Upon the happening of any of the foregoing events of default and at any time thereafter, Seller has the option and without notice to Buyer may declare all of the indebtedness of Buyer to Seller to be immediately due and payable, and Seller shall have the rights, options, duties and remedies of the secured party, and Buyer shall have the rights and duties of a debtor under the Uniform Commercial Code as adopted in the State of Arizona. Seller may take possession of the goods without judicial process at any time or place and Seller may enter upon the premises where said goods may be and remove same. Seller may take possession of any other goods in the hereinbefore-described goods at time of repossession, wherever such other goods may be therein, and hold same for Buyer at Buyer’s risk without liability on the part of Seller, Buyer to be liable for any charges for storing such goods incurred by Seller____
We interpret this paragraph as descriptive of- the rights of seller as the secured party and as providing, in addition, that the in the event of repossession, other goods located in the truck or trailer may be held on behalf of the buyer without risk. Paragraph 10 does not provide that seller has the right to retain possession of or obtain ownership in such goods as security for the transaction.
Huskie’s final argument is that the language in the agreement by which Ames purported to retain a security interest in the horse trailer was misleading because it did not inform Huskie that the security interest thus attempted was violative of Arizona law. The argument concludes by stating that this constitutes a violation of TILA. We reject the argument, however, because that very question was subject to reasonable dispute and resolved earlier by us in this opinion. The provision cannot be misleading where its error is grounded on an after-the-fact judicial interpretation of its validity. The provision was not misleading because it could not be understood. We have found that it was not valid under the facts of the case but that does not make it retroactively misleading so as to invoke the penalties of TILA.
In summary, we have held that Ames' actions in seizing the 1976 Champion horse trailer from Huskie in 1978 amounted to a conversion under the law. We have also held that the contract does not violate the Truth-in-Lending Act. Accordingly, we remand this matter to the trial court for a determination of damages, if any, suffered by Huskie as a result of the conversion of the horse trailer.
Affirmed in part; reversed in part; remanded.
CONTRERAS and OGG, JJ., concur.

. The record contains evidence of both amounts. The court’s findings of fact incorporate the parties’ pretrial stipulation of facts which indicates that the balance was “less than $1,000.” No further finding of fact as to the exact balance was made.

. The response to question #35 in plaintiffs second nonuniform interrogatories indicates that the "cash price” of the Ford pickup truck was $4995.00.

. There was some disagreement at oral argument as to whether the $600.00 was paid on June 13, 1977, or one month later. In any event, the payment was made long before the January 1978 repossession of the horse trailer by Ames.

. The stipulation provided:
Plaintiff may amend her Complaint and file the attached First Amended Complaint in this cause. The cause shall be hereinafter styled according to the style of the amendment. The previous answer ... shall be sufficient but no defenses are waived, hereby____

. This regulation was effective at the times pertinent to this litigation. However, pursuant to the Truth-in-Lending Simplification and Reform Act, substantial changes in TILA regulations have been made and, effective on April 1, 1982, this provision was repealed. See Reg. Z, 46 FR 20892, April 7, 1981. See also Pub.L. 96-221, 94 Stat. 168 (1980).
For general discussion of the impact of the changes in the statute and regulations on the disclosure of security interest, see Boyd, The Truth-in-Lending Simplification Act, 23 Ariz.L. Rev. 1, 63-67 (1981).

. This provision was also repealed effective April 1, 1982. See Reg. Z, 46 FR 20892, April 7, 1981. See also Pub.L. 96-221, 94 Stat. 168 (1980).